Bank of Hartford County *v.* Waterman.

---

## BANK OF HARTFORD COUNTY *vs.* NATHAN M. WATERMAN, SHERIFF.

An officer who had undertaken to attach real estate on mesne process, made return that he had attached a certain piece of land belonging to the defendant, and had left with the town clerk a true and attested copy of the writ and of his endorsement thereon. He had in fact left with the town clerk a copy of the writ, with an endorsement thereon that he had attached a different piece of land from the one described in his return. Both pieces belonged to the defendant, and either would have been sufficient to satisfy the claim. The error was not discovered until the plaintiff in the suit had obtained judgment and taken out execution, at which time more than two years had elapsed, both from the date of the levy and from that of the return. The debtor in the mean time had failed, and no property could be found on which to levy the execution. In an action on the case for the default, to which the statute of limitations was pleaded, it was held, that the cause of action did not accrue, either at the time of the service of the writ or at that of the false return, and not until, by the failure to obtain satisfaction of the execution, the plaintiff had sustained actual damage. [Ellsworth, J., dissenting.]

The injurious consequences in such a case are not mere aggravating circumstances enhancing a legal injury already inflicted, nor the mere development of such injury, but an indispensable element of the injury itself.

When an injury, however slight, is complete as a legal injury at the time of the act, the period of limitation at once commences; but when the act is not egally injurious until certain consequences occur, the period takes date from the consequential injury.

A neglect to serve mesne process, or a false return of such process, is not in itself a legal injury.

The distinction sometimes made on this subject between the case of mesne process and that of final process, is one rather of practice than of principle, actual damage being essential to a right of action in both cases, and the only difference being that in the latter case damage is presumed, but may be disproved, while in the former case it must be proved.

A distinction is to be made, in relation to the right of action resulting, between breaches of public duty, and breaches of private duty or of contract. In the case of a public duty there is no direct relation between the public officer and the party in whose behalf the duty is to be performed, and the breach becomes a ground of action in favor of the individual only when damage results to him in consequence.

Ignorance of a right will not suspend the operation of the statute of limitations against such right.

A party cannot be debarred by an equitable estoppel from availing himself in a court of law of the statute of limitations.

ACTION on the case against the defendant, as sheriff of Hartford County, for the default of his deputy.

The following facts were found by the court: The plaintiffs on the 2d day of December, 1853, placed for service in the hands of Alonzo Warner, a deputy of the defendant, a writ of attachment in their favor against S. B. Smith & Co., a firm consisting of Jonathan C. Brown of Bristol in said county, and S. B. Smith of the city of New York, with directions to attach the real estate of Brown in Bristol, who had at the time sufficient property to secure the claim. Warner undertook the service of the writ, and on the 12th of January, 1854, made return thereof to the Superior Court for Hartford County, to which the writ was returnable, with his endorsement thereon, that on the 2d day of December, 1853, he had attached all the interest of Brown in a certain piece of land in Bristol, (described in the return,) and had in due time left a true and attested copy of the writ and endorsement with the town clerk of the town of Bristol. He had in fact left at the office of the town clerk a copy of the writ, with an endorsement that on the 7th day of December, 1853, he had attached all the interest of Brown in another piece of land in Bristol, (different from that described in the return,) which was certified as a true copy of the writ and endorsement, and was the only copy left with the town

clerk.   Each of the pieces of land was the property of Brown, and sufficient to satisfy the claim.

The defendants in the suit appeared in court by counsel, and answered to the case, and it came by continuances to the December term of the court in the year 1855, when, on the 20th day of February, 1856, being the 48th day of the term, the plaintiffs obtained judgment for $4,125 damages and $66.04 costs.   Execution was taken out, and they were about to levy it upon the land, when for the first time it was discovered that the officer had made the mistake above stated.   Before they obtained judgment the defendants had failed, and no property of the firm, or of either defendant, could be found on which to levy the execution.

The present suit was brought on the 20th day of December, 1856.   The defendant pleaded in bar that the cause of action did not accrue to the plaintiffs within two years next before the commencement of the suit.   The case was reserved for the advice of this court.

*Baldwin* and *Doolittle,* for the plaintiffs.

The question whether the action is barred by the statute of limitations, must depend upon when the cause of action accrued.   To determine this we must ascertain what was the cause of action.

1.  The cause of action was not the mere neglect to attach property.   This might have resulted in no actual damage. The debt might have been paid before judgment; or the plaintiffs might at once have attached again and secured their claim.   If the plaintiffs had been subjected to some inconvenience and expense in a new effort to secure their claim, they might perhaps recover damages therefor, but that clearly would not be the damage sustained by the plaintiffs in this case.   If the officer had made return that he had attached no property, the plaintiffs would have been bound to use reasonable diligence to obtain other security, and could doubtless have recovered whatever damage was actually sustained in the expense thus incurred or in the loss of the debt, from the officer's neglect.   But clearly the mere neg-

lect to attach, independent of its results, was not an infringement of the plaintiffs' rights for which an action would lie.

2. The false return, independently of the damage resulting from it, was not the cause of action. The injury was inflicted by the false return, and yet that would have been harmless but for our trusting in it. It was the deceit practiced upon us, by means of the false return, that caused the injury. Until thus confided in and acted upon by us, no right of action on the ground of the false return would have accrued to us. This is obvious from the consideration that if the return had truly described an attachment of one piece of land and had falsely stated an attachment of a second piece, and the first had been ample for the security of the claim, and all the facts had been known to us, we could not have sustained an action for the technical injury.

3. The cause of action was the false return and the damage consequent upon our trusting in it. The return was a continuing declaration. We had a right and were in duty bound to trust to the correctness of the return. Mere deceit is never a ground of action until another is injured by it, and it was not until, confiding in this representation, we came to levy our execution on the land returned as attached, and then found for the first time that the return was false, and that no property, of which there had before been an abundance, could be found on which to levy, that damage resulted to us, and a cause of action accrued in our favor. And it is not important perhaps whether the original default or the false return be regarded as the instrument of the wrong, since actual damage is essential to a complete cause of action in either case, and no actual damage resulted to us until the failure to find property on which to levy our execution. *Fitch* v. *Smith*, 9 Conn. 42. *Clark* v. *Smith*, id. 386. *Clark* v. *Smith*, 10 id. 1. A mere neglect to attach is not *per se* actionable, nor a mere false return. Suppose an officer falsely returns upon a subpœna that he has summoned a witness, and yet the witness attends court; no damage having been caused, no right of action has arisen. So where a writ directs an officer to attach to a certain amount,

and he attaches to but half that amount, and yet attaches enough to satisfy the execution when obtained, no cause of action has arisen. Or where he attaches nothing, and the plaintiff fails to recover judgment in his suit. Suppose however, he returns that he has attached two pieces of land when he has in fact attached but one, and the plaintiff, rightly relying on the truth of the return, levies his execution on the piece not attached, and afterwards discovers that it was never attached and had been covered by a subsequent mortgage. Here the whole damage would be done by the deceit, at the time when the plaintiff was led by it to lose his lien on the land legally attached by taking the other. And yet here the service of the writ would have been unexceptionable, since the property actually attached may have been ample. The true principle is stated by the counsel for the defendants in *Williams* v. *Mostyn*, 4 Mees. & Wels., 149. See also *Planck* v. *Anderson*, 5 T. R., 37; *Scott* v. *Henly*, 1 Mo. & Rob., 227; *Brown* v. *Jarvis*, 1 Mees. & Wels., 704; *Lewis* v. *Morland*, 2 B. & Ald., 56, 64. See also the remarks of the court in *Williams* v. *Mostyn*, (*supra*,) where they express their adherence to the decision in *Planck* v. *Anderson*, (*supra*,) and their disapprobation of an opposing decision in *Barker* v. *Green*, 2 Bing., 317. See also *Roberts* v. *Read*, 16 East, 215; *Harriman* v. *Wilkins*, 20 Maine, 93; and dissenting opinion of Judge Shepley in *Betts* v. *Norris*, 21 id., 314; also *Parmelee* v. *Baldwin*, 1 Conn., 313; *Rice* v. *Hosmer*, 12 Mass. 127; *Mather* v. *Green*, 17 id., 62; *Gordon* v. *Austin*, 4 T. R. 611; *Derrickson* v. *Cady*, 7 Penn. S. R. 27; *Rush* v. *Barr*, 1 Watts, 110.

·4. An important distinction, in this connection, is made between the discharge by a public officer, of a duty to an individual, which is one of his public duties, and the discharge of a mere private duty, or a duty growing out of contract express or implied. The public officer stands in no such relation to the individual that a right of action accrues at once to the latter, upon the neglect of the duty, as in the case of the right of action growing out of a mere breach of contract. It is only when the individual sustains damage from

Bank of Hartford County *v.* Waterman.

the breach that the public officer can become liable in a private suit; and then for the tort, not for the breach of contract obligation. *Lovell* v. *Bellows*, 7 N. Hamp., 375.

5. The statute of limitations was not designed to deprive a party of a fair and reasonable opportunity to bring a suit. To construe it as claimed by the defendant would make it a denial of right. Ang. on Lim. 21. *Jackson* v. *Lamphire*, 3 Pet., 280. *Gillon* v. *Bodington*, 1 C. & P., 541. *Dorr* v. *Starwourt*, 1 Blatch., 179. *Phalen* v. *Clark*, 19 Conn., 421.

*Hungerford* and *Parsons*, for the defendant.

1. The cases where the statute of limitations does not begin to run until actual damage occurs as a consequence of some previous act, are wholly where the act is not tortious or injurious in itself, and becomes so only by reason of the consequences which result some time after. *Roberts* v. *Read*, 16 East., 215. *Gillon* v. *Bodington*, 1 Car. & P., 541.

2. In cases where there is a neglect or breach of duty, whether the duty be created by contract, express or implied, or otherwise, and whether it be official or not, the neglect or breach of duty is the gist of the action, and the statute begins to run from the time of such neglect or breach. *Short* v. *Mc Carthy*, 3 B. & Ald., 626. *Howell* v. *Young*, 5 id., 259. *Brown* v. *Howard*, 2 Brod & B., 73. *Stafford* v. *Richardson*, 15 Wend., 302. *Bank of Utica* v. *Child*, 6 Cow., 238. *Executors of Sinclair* v. *Bank of So. Carolina*, 2 Strob., 344. *Wilcox* v. *Plummer*, 4 Pet., 172. *Denton* v. *Emery*, 5 Eng., (Ark.) 228. *Battley* v. *Faulkner*, 3 B. & Ald., 288. *Kerns* v. *Schoonmaker*, 4 Ohio, 331. *Argall* v. *Bryant*, Sandf. S. C., 98. *Rosborough* v. *Albright*, 4 Richard., 39. *Miller* v. *Adams*, 16 Mass., 456. *Betts* v. *Norris*, 21 Maine, 314. *Sheriff of Norwich* v. *Bradshaw*, Cro. Eliz., 53. 2 Green. Ev. § 433, 4, 5.

3. It makes no difference what the form of action is, provided it be substantially for breach of duty. *Howell* v. *Young*, 5 B. & Ald., 259. Same case, 2 C. & P. 238. *Granger* v. *George*, 5 B. & C., 149.

4. Neither ignorance on the part of the plaintiffs of the breach of duty, nor a fraudulent concealment on the part of the defendant, can be a bar to the running of the statute. *Imperial Gas Light Co.* v. *London Gas Light Co.*, 26 Eng. L. & Eq., 425. *Troup* v. *Smith*, 20 Johns., 33. *Fee* v. *Fee*, 10 Ohio, 469. *Allen* v. *Mille*, 17 Wend., 202.

STORRS, C. J. This action is founded on the neglect of an officer to make a valid attachment of real estate and a false return that he had made such an attachment, whereby the plaintiffs, when they undertook to enforce their supposed lien by the levy of an execution, to their surprise, failed to obtain satisfaction and lost their debt. The defendant meets these averments with a plea of the statute of limitations, which restricts the right of suit for such injuries to a period of two years next after it shall accrue.

Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation. He may discover his injury too late to take advantage of the appropriate remedy. Such is one of the occasional hardships necessarily incident to a law arbitrarily making legal remedies contingent on mere lapse of time. *Brown* v. *Howard*, 2 Brod. & B., 73. *Sims* v. *Brutton*, 1 Eng. L. & Eq. R., 446. *Short* v. *McCarthy*, 3 B. & Ald., 626. *Blair* v. *Bromley*, 5 Hare, 542. *Battley* v. *Faulkner*, 3 B. & Ald , 288. Strong equitable considerations in favor of the present plaintiffs seem, however, to grow out of the fact, that they were actually *betrayed* into ignorance of their rights by the wrongful acts of the defendant himself; that they were misled by the very record to which they might and should rightfully refer for knowledge of their rights, and of which the defendant was himself the author, having verified it under his official oath. It is palpably unjust for the defendant to set up the statute as a defence under such circumstances; to do so is in one sense taking advantage of his own wrong. Yet it is difficult to see that he is not, by the clear provisions of the statute itself, protected in so doing: nor are we aware of any well established doctrine by which a party in a court of law can be prohibited, on the score of

equitable estoppel, from defending himself under a public statute, designed to be of universal operation in the matter of legal remedies. Lord Campbell properly suggested, relative to a controversy not unlike the present, that "hard cases must not make bad law." *East India Co.* v. *Paul*, 1 Eng. L. & Eq. R. 44, 48. At the same time, if the *dictum* of Lord Mansfield, (*Bree* v *Holbech*, Doug. R. 655,) that "there *may be* cases which fraud will take out of the statute of limitations," were confirmed by direct adjudication, we should be reluctant to withhold the application of the doctrine in the present instance. (See *Blair* v. *Bromley*, supra.)

These views are, however, immaterial to either party; as the cause of action, in our judgment, accrued—that is to say became complete and perfect—within two years next previous to the commencement of the present suit.

Whether the true basis of the injury eventually suffered by the plaintiffs was the neglect to serve the process, or the false return, it can not be useful to determine, as neither of these facts singly, or both together, in our opinion, would be enough to constitute a cause of action. No right to sue became lodged in the plaintiffs until a certain *consequence* resulted from one or both of these breaches of duty by the officer.

If this be so, that the damnifying consequences of the defendant's violation of duty are an essential ingredient in the plaintiffs' cause of action, the statute of limitations can not begin to run until this cause of action becomes complete. The consequences are not, in such a case, mere aggravating circumstances, *enhancing* a legal injury already suffered or inflicted; nor are they the mere *development* of such a previous injury, through which development the party is enabled for the first time to ascertain or appreciate the fact of the injury; but, inasmuch as *no legal wrong* existed before, they are an indispensable element of the injury itself, and must therefore themselves fix, or may fix, the period when the statute of limitations shall commence to run. Authorities can hardly strengthen a proposition so manifestly just. If we are wrong, some strictly legal injuries might never for a

moment be capable of redress. For instance, so much time might accrue between the injurious act of bringing a vexatious suit and its final termination in favor of the defendant therein, that, if the original act were the entire *gravamen* of the latter's suit against the wrong-doer, he might be barred of his remedy before his right to redress ever vested in him for a single hour. But authorities are not wanting on this point. When the injury, however slight, is complete at the time of the act, the statute period commences; (*Wordsworth* v. *Harley*, 1 B. & Ad. 391;) but when the act is not legally injurious until certain consequences occur, the statute begins to run from the consequential injury. (*Roberts* v. *Read*, 16 East, 215.) In *Gillon* v. *Bodington*, (1 Car. & P., 541,) it is agreed that the language of the English statute was even somewhat strained to make its construction comport with this very just principle,—the limitation, by that enactment, taking date from the "fact committed," and the court extending the meaning of this term so as to make consequential damage one essential part of the *fact* referred to.

It only remains, therefore, to determine whether a neglect to serve mesne process, or a false return of such process, is actionable in itself, or whether it becomes so only when a real injury follows from it. No distinction can be drawn between a neglect to serve and a false return in deciding the point presented. (Lord Denman, in *Wylie* v. *Birch*, 4 A. & E., 566.)

The case of *Planck* v. *Anderson*, 5 T. R., 37, early settled the doctrine, that when an escape on mesne process took place, the only remedy of the plaintiff was an action on the case for the consequential injury, and that "if no damage be sustained, the creditor has no cause of action." (Buller, J.)

Of the contrary decision of *Barker* v. *Green*, (2 Bing., 317,) we shall take occasion to speak hereafter. After the latter decision, in 1836, Lord Abinger, at the exchequer chamber, in a colloquy with counsel, took strong ground against the idea that an officer was at all events liable in nominal damages for neglect to serve mesne process. (*Brown*

v. *Jarvis*, 1 Mees. & Wels., 708.)  Two years after, the same court unequivocally denied the right of a plaintiff to subject an officer for an escape on mesne process, unless he had sustained actual damage or delay of his suit thereby.  (*Williams* v. *Mostyn*, 4 Mees. & Wels., 145.)  They expressly disapprove *Barker* v. *Green*, suggesting, perhaps incorrectly, that it is loosely reported.  Lord Denman, while delivering the judgment of the court of Queen's Bench in 1839, used this language:  " No damage is stated, unless some *legal damage* necessarily results from the neglect of the sheriff [to arrest on mesne process.]  We do not think that any such damage does necessarily result."  That is to say, the act is not in itself legally injurious.

The supreme court of New Hampshire early decided, that a sheriff is not liable to an action for an escape on mesne process, if he have the body at the return of the writ.  (*Cady* v. *Huntington*, 1 N. Hamp., 138.)  In *Clark* v. *Smith*, which was twice before the supreme court of this state, (9 Conn., 379, 10 id., 1,) and in which the court decided that a creditor's recovery against a sheriff for an escape on mesne process must be restricted to his actual damage, the doctrine of Justice Buller, enunciated in *Planck* v. *Anderson* and quoted above, was cited by the court in full without dissent.  (9 id., 386.)  Upon the second trial of the cause, the jury found for the defendant, the court below having instructed them that the defendant was liable only for damages which the plaintiff had sustained by reason of the officer's neglect.  This might have been construed as a direction to award no damages whatsoever unless some actual injury was shown.  The jury at all events felt themselves at liberty to act under such a rule; and although the case was not brought before the supreme court on account of a verdict against evidence, yet that tribunal seem freely to have assumed that the judge's charge to the jury was susceptible of the construction just suggested, and thereupon indorse the verdict.  Judge Bissell says:  " The jury were directed to give damages commensurate with the loss sustained by the officer's neglect.  For aught that appears, they have done so; and neither the prin-

ciples of justice, nor any rule of law demands of us that we should interfere with their verdict." We must believe that the law is settled, that actual damage is an essential element in a cause of action relating to a negligent service or false return of mesne process. Roscoe's Nisi Prius, 609. 2 Saund. Pl. & Ev., 878.

Something may properly be said of decisions, which our examination of this case has brought to light, and which have an aspect adverse to the views adopted by us.

Before discussing them, it is well to remark, that a distinction is often drawn in the books between a cause of action growing out of a nonfeasance or misfeasance relating to *mesne* process, and the same when they concern writs of execution. We believe the difference between the two cases to be practical rather than theoretical. We have no doubt that actual damage must be the basis of recovery in both; (*Wylie v. Birch*, supra;) but that it is presumed to be incident to one and not to the other. The burden of proof lies on the plaintiff in the latter instance to show some actual damage; in the former, on the defendant to show that there has been none. It has been held, that if an officer, charged with a false return on final process, can prove that *after* the return the debtor became a legal bankrupt, so that the holding of the body could have been of no avail to the creditor, a complete defence is established; and that a plea in bar, setting up the bankruptcy only, is a complete answer to the action. (*Wylie v. Birch*, supra.) Now it is idle to say, that proof of actual damage is not necessary in the case of an omission to execute final process, when the disproof of such damage is a perfect defence. If a trespass is made upon land, the act is legally injurious; nominal damages, at least, must be awarded. The trespasser can not establish a complete defence by proving there was no real loss to the plaintiff. Still, courts have sometimes ruled that they will presume some actual damage to be necessarily incident to a breach of duty in reference to final process. The body being held by an execution for the payment of the debt, not for its security merely, they have regarded an escape, even for a short time, as suspending the

debtor's inducement to perform his duty of *immediately* paying his obligation, as taking away from the creditor, for the time being, that which the law gives him as his *satisfaction*, and as invading his right to the constant, uninterrupted detention of the debtor's body. But no such inference, however regarded, arises in the case of a neglect to retain the custody of a debtor on mesne process. The debt may notwithstanding be perfectly secure and enforced as promptly as if the security was constantly under the control of the officer.

To return: *Barker* v. *Green* was an action for a failure to arrest on mesne process. The jury, finding no actual damage, rendered a verdict of one farthing. An attempt, with a view to costs only, was made to set aside the verdict. The court refused the motion, holding that "if there was a breach of duty, the law must presume some damage." In *Betts* v. *Norris*, a decision of the supreme court of Maine much noticed at the bar, the opinion of the majority of the bench seems to rest on the same idea; that a breach of official duty is necessarily a violation of the individual legal rights of the person in whose favor the duty is to be performed. (21 Maine, 314.) We can not assent to the sweeping doctrine of these cases. It would invite interminable and preposterous litigation.

We apprehend, as has been suggested by the counsel for the plaintiffs, that a distinction is to be observed between breaches of public duty and breaches of duties to individuals; such, for instance, as those created by contract, whereby each party enters into and defines for himself an immediate obligation to the other. In the latter case, the breach of such an obligation is a direct and immediate wrong to the other, so that whether any evil consequences follow, or whatever consequences follow, the cause of action dates from the wrong, which will be treated as the cause of action, whether the plaintiff sues in tort or contract. For instance, if an attorney neglect his client's business in such a manner as to break the implied contract between them, although a loss may not occur for years, a complete right of action accrued when the duty was violated; and the subsequent loss merely

aggravates the injury.    And whether he be sued in assumpsit or in case, the breach of duty will always be the injury for which he must respond.    *Howell* v. *Young*, 5 B. & C., 259; *Short* v. *Mc Carthy*, supra; *Brown* v. *Howard*, 2 Brod. & B., 73; *Wilcox* v. *Plummer*, 4 Pet., 172.

But where the duty is of a public nature, there is no direct relation between the public officer and the party in whose behalf the duty is to be performed.    If it were so, then there should be the implication of a contract between them, and nonperformance be actionable in assumpsit.    Yet it is clearly settled that the latter form of action can not be sustained in such a case.    *Lovell* v. *Bellows*, 7 N. Hamp., 375, 388. .

The duty violated is primarily a duty to the public; the violation is therefore unlawful; and when its consequences are the invasion of an individual right, (and then only,) it becomes a proper subject of redress by him.

The duties imposed upon public officers are analogous to those of moral obligation.    Their violation is not necessarily a legal injury to those in whose favor they exist.    They must affect some right such as the law is wont to redress, before they can be made the subject of a suit.    It is the duty of a municipal corporation to keep certain highways free from obstruction.    The duty is to the public for the benefit of every individual in the community.    If an obstruction is negligently permitted to exist, it may be said that, in a sense, a duty to each individual is violated.    But it is not competent for every inhabitant of the vicinage thereupon to bring his action for the breach of duty to himself; not even if he is put to some trivial inconvenience by the obstruction.    If he voluntarily or negligently throws himself in the way of being injured by it, he can not recover.    *Butterfield* v. *Forrester*, 11 East, 60.    The mere violation of the public duty, although the duty is to him indirectly, involves no correlative legal right on his part to sue for such violation.

It is said familiarly, that rights and duties are reciprocal. This is, in a moral sense and in a properly understood legal sense, true.    But it is evident from the illustration just employed, that there is no such legal reciprocity between the

general duties of public officers and the rights of parties in whose behalf the duties are to be performed, that the right is always actionable when the duty is violated.   In the case of the highway, a person must be injured in reference to some other right than that which is correlative to the mere duty of keeping the highway clear for his benefit,—in his right to his health, or limbs, or property,—before he can seek legal redress.   Then he will have suffered a consequential, not an immediate injury, and can resort to his action on the case.

An officer neglects to serve a subpœna.   It would be said to be his duty to serve all subpœnas.   A plaintiff who gave it to him goes to trial; the witness voluntarily appears, and a full recovery is obtained.   Could a suit be sustained by the plaintiff for the nonfeasance of the officer?   Is the plaintiff's right legally co-extensive with the officer's duty?   Or must some other right of the plaintiff be affected by the neglect, to enable him to sustain an action?

A writ of attachment is served, without the plaintiff's consent, as a summons.   The defendant is perfectly responsible, and the plaintiff, without delay or embarrassment, obtains complete pecuniary satisfaction.   Can he resort to the officer for the breach of his duty in not complying with the mandate of the writ?

An assessor's duty is to make a correct assessment in the case of every tax-payer.   This is the obligation he owes to the public.   His conduct is unlawful if he neglects it.   If a tax-payer is assessed too little, the public duty is violated; can the tax-payer sustain a suit therefor?   Or, even if his property is assessed too much, must he not wait until some other right than that which corresponds to the official duty, (such as his right to his property, which may not be taken for an illegal tax,) is violated before he can sue?   To hold that every nonfeasance and misfeasance of an officer is actionable *per se* in favor of the party who is the special subject of the duty neglected or violated, would be a source of infinite confusion. We concur in the proposition of Mr. Justice Shepley, whose dissenting opinion in *Betts* v. *Norris* seems to us to contain

reasoning more cogent and conclusions more just than those of the majority of the court, that "a mere violation or neglect of duty enjoined by law, or otherwise imposed without contract, unless accompanied or followed by an injury to some person, can not be the foundation of an action at common law."

Again, it would seem that for the justification of our general position in the present case, a strict reciprocity between public duties and individual rights might be safely conceded. The term "duty" may be used in a sense too strict to stand the test of legal criticism. We say familiarly, that it is an officer's duty to serve process—to obey the mandate of a writ. Now it is his *function* to do so, but is it necessarily his *duty*, in an absolute sense? If not, then there is no absolute right on the part of a suitor to the performance of the function. If the right and duty were absolute, that a writ must be served—served according to its literal mandate, and indorsed with a true return,—then an officer could not defeat an action for an escape on mesne process, by shewing that the plaintiff had no lawful claim against the debtor. Yet, that he can, is an elementary principle. (*Alexander* v. *Macauley*, 4 T. R., 611.) Now the real right which the law confers upon a suitor, and the real duty it imposes on an officer, is that the claim shall be enforced, the debt collected, through the law's process. The creditor has no absolute right to require that the exact amount of property set forth in his writ shall be attached. If the officer attaches but a tenth of that sum and this is sufficient to cover the plaintiff's debt, he has performed his duty and infringed upon none of the suitor's rights. The same course of reasoning would show that the plaintiff has no absolute right to a correct return. For instance, if its falsity should never become known to the adverse party, and an execution should be levied upon the property originally taken and should legally condemn it for the plaintiff's benefit, no action would lie. It is but another step in a perfectly natural chain of reasoning to say that the suitor has no absolute right to require that any of the defendant's property shall be attached; although it is the officer's legiti-

mate function to obey the writ. His right is that the property of the defendant, or a certain portion of it, which was in reach at the time the attachment should have been served, or its equivalent, shall be forthcoming at the time of the issue of the execution, in case the execution-debt is not paid on the officer's demand. So far as the attachment is concerned, therefore, the creditor is only entitled to require that the officer shall proceed at his peril if he omits to attach. A suitor's right is not, then, a right to literal forms of procedure, but to enforce his judgment and collect his debt by law. Until this right is injured, no right is injured. Until the officer fails to bring the property of the debtor within the power of the law's final process, founded upon a creditor's valid judgment, he has been guilty of no violation of duty in a legal view. So that, if we suppose a direct relation between the plaintiff and the officer—a legal reciprocity of right and duty between them—and concede that damages are to be presumed where the former is invaded or the latter violated, it is clear that neither of these incidents occurs until something more than a neglect to attach or an incorrect return is imputable to the officer. The doctrine to which our course of reasoning has brought us is not novel as a general proposition. Lord Tenterden, in *Lewis* v. *Morland*, (2 B. & Ald., 64,) previous to the decision of *Barker* v. *Green*, used this language: " Supposing the sheriff to be guilty of a breach of duty in letting the party out of custody, it does not thence follow that any action can be maintained against him for such breach of duty." The opinion of Lord Denman in the case of *Randell* v. *Wheble*, 10 A. & E. 719, contains this passage: " We agree with the case of *Brown* v. *Jarvis*, that it is the duty of the sheriff to arrest the party on the first opportunity that he can; but we also agree with the court in that case, that some actual damage must be shown in order to make the negligence of the sheriff in that respect a cause of action." In a later case the same judge says:—" When the clear right of a party is invaded in consequence of another's breach of duty, he must be entitled to an action against that party for some amount." *Clifton* v. *Hooper*, 6 A. & E., 468.

Being of opinion that no right of the plaintiff was invaded when the officer departed from his duty in the service and return of the plaintiff's writ of attachment,—that he suffered no legal injury until the consequences of that breach of duty were brought home to him by his failure to enforce his execution,—that until then he had no right of action whatever,—we decide that the statute of limitations took date from the time of the consequential injury and not from the nonfeasance or misfeasance of the officer; and advise that judgment be rendered for the plaintiffs.

In this opinion Hinman, J. concurred.

Ellsworth, J. The importance of the principle involved in this case, is my apology for expressing, at some length, views that do not fully accord with those entertained by my learned associates.

The case finds that the defendant's deputy has done no official act within two years before the commencement of this suit; nor within that time has he omitted to do any official duty; nor has he practiced fraud to conceal from the plaintiff any default, of nonfeasance or misfeasance, with which he could have been charged. The language of the statute of limitations which he pleads, is as follows: "No suit or action either at law or in equity, shall be brought against any sheriff, sheriff's deputy or constable, for any neglect or default in his office or duty, but within two years next after the right of action shall accrue." It is difficult for me to see, upon these premises, how the defendant can be liable at this time in this action.

The first inquiry, in order, would seem to be, at what time did this cause of action accrue? All agree that this is the chief and important question; it is the test which is applied in every case in the books. My brethren say that it was not on the 2d day of December, 1853, when the land was supposed to be attached, nor on the 12th day of January following, when the writ was returned with an indorsement of service in which the land was correctly described, but at

Bank of Hartford County *v.* Waterman

some period after judgment, in March, 1856, within two years before this suit was brought. Let us then look at the cause of action as stated.

The plaintiffs say in their declaration that on the first day of December, 1853, they prayed out a writ of attachment against S. B. Smith & Co., and put it into the hands of Warner, the deputy of the defendant, to serve and return; that one of the defendants therein named had real estate in the town of Bristol sufficient to satisfy the debt, which the officer could and should have attached; that in fact he attempted to attach it, and succeeded, except that he did not leave a copy with the town clerk of Bristol, as the law requires, there being in fact in the copy so left a description of a different piece of land as attached; and that on the 12th day of January, 1854, he returned the writ to court with his endorsement thereon, in which he described the land attached correctly, as he ought to have done on the copy left with the town clerk of Bristol, and which he made return that he had done. The plaintiffs go on to say, that at the December term of the court in 1855, they recovered judgment against said S. B. Smith & Co. for $4,125.16 debt, and $66.04 costs of suit, for which they took out execution, and then, for the first time discovered that the officer had made the mistake before stated in the copy left with the town clerk, so that they could not then hold the land by levying the execution upon it. They further say, that by reason of such untrue indorsement they have been prevented discovering the mistake, but confiding in its correctness proceeded to obtain judgment at considerable cost and expense.

The declaration is adroitly drawn, I must think, in view of the difficulties of the statute of limitations, but I can not read it as stating any other cause of action than an official neglect to attach the property of S. B. Smith & Co. in due form of law; and I conceive that what is said about a false return is auxiliary to the cause of action, a mere statement of the manner in which the default of the officer occurred. If there be any other cause of action stated besides this nonfeasance and the loss which has resulted therefrom, I can not

see it, and must confess my entire ignorance of its existence. Certainly, on this declaration, the sheriff could be made liable for not attaching the property, for it avers that there was property within his reach which he neglected to attach as he should have done; and that as a consequence the plaintiffs have lost their security and their debt. This is a perfect cause of action of itself, the one intended to be declared on by the pleader, and the one on which the plaintiffs must recover, if they go for the loss of their debt, instead of their expenditure in prosecuting the suit to judgment. If, as was said on the argument, the action is brought for an injury arising from the plaintiffs' putting confidence in the fidelity of the officer and his acts, and the expenses incurred in going on in consequence to get judgment in the suit, then the declaration is double, and what is said about a misfeasance, will, so far as that is the cause of action, allow of the plaintiffs' recovering only the expenses of their suit against S. B. Smith & Co. The debt is lost by reason of the neglect to attach, and not by reason of what was done. This would be most obvious if it were true that all the property of S. B. Smith & Co. passed out of their hands immediately after the attachment, as may be the case. The subsequent return in January could not cause the loss of the security or the debt. If then the nonfeasance is not the cause of action, the debt is not the rule of damages.

But if we take the *misfeasance* as the cause of action, the plaintiffs are in no better condition, for the untrue indorsement of which they complain was made more than two years before suit. The reply of the plaintiffs that they did not know that the return was false, and confided in it as true, is not to the purpose. That may be said in many cases. Ignorance of a default and confidence in officers and others, are not cases excepted by the statute of limitations. If fraud is practiced to conceal the right to sue, equity may extend the time for suing, as was held by this court in *Phalen* v. *Clark*, 19 Conn., 421; but this is not that case, and no lawyer will contend that ignorance of one's right can be interpolated as an excepted case in the statutes of limitation, either in

law or equity.   It is the very object of these statutes, and pre-eminently of the statute in favor of executive officers, (where the time is as short as in crimes) to protect them from stale claims, whether their default is known or unknown.   It should be remembered that officers are compelled to act promptly, often under circumstances of perplexity, and without advice of counsel.   Whoever will employ them, should, in view of the statute, review their proceedings in season, if they mean to hold them liable for default.   Every officer has a clear right to demand this, and so has every attorney and other agent in relation to any default of theirs.   I consider the decision of my associates to have effected a repeal of this important statute.   The like result will follow in the case of attorneys.

Nor is there any thing in the idea that a sheriff is concluded and estopped by any official act of his, (where there is no fraud,) from inquiring when it was his default occurred, and insisting on the benefit of this statute.   Certainly he may have the protection of the law, if he can bring himself within its provisions.   He has, I think, done it here.

I must think, then, that if the officer is to be held as originally liable for a misfeasance rather than a nonfeasance, he is not liable in this case, for the cause of action is of more than two years' standing.

Suppose the plaintiffs had had immediate knowledge of the officer's mistake in his return of the process, could he not have been sued at once ?   But the default is the same, knowledge or no knowledge.   Knowledge then is not material to the question at issue.   And yet if I rightly understand my brethren, they would hold the statute to run, if the plaintiffs had known of their right of action at the time.   That this circumstance is unimportant, see *Troup* v. *Smith,* 20 Johns., 33, and *Argall* v. *Bryant,* 1 Sandf., 98.

There is another view which may be taken.   It seems agreed, that if an officer *neglects to attach* where he is required to do it, he is guilty of a default at once, and may be sued immediately.   The reason given is that there is an official default, which is enough of itself, and besides which the

creditor sustains damage in not acquiring the additional
security which an attachment of property would have given
him.   Suppose now, as in the present instance, the attach-
ment in fact had failed to take effect because of some acci-
dental mistake, is there not the same default and the same
loss of security ?   I think there is, and that the same cause
of action exists in the one case as in the other.   To give
effect now to the statute of limitations in the one case and
not in the other, is making a distinction without a difference,
and what is more to be regretted, to the injury of a class of
persons peculiarly needing protection against stale claims.
The language of the statute is too explicit to be thus got rid
of: " If any sheriff shall not *duly execute* and *return* the
writ, or shall make a *false* or *illegal return* thereof, he shall
&c." The plaintiffs' counsel have sought to liken this case to
*Roberts* v. *Read*, 16 East, 215, and *Gillon* v. *Boddington*, 1
Car. & P., 541.   These were actions for consequential dam-
ages where there had not been an illegal or tortious act.   It
is said this is such a case.   They seek to evade the statute
by drawing a distinction between the act from which an
injury flows and the injury consequent thereon as developed
from time to time.   There is such a distinction, I admit, but
it can not prevail here, nor in any case where the act itself
gives a cause of action.   The rule is perfectly well settled
that in looking for the *cause* of action, the consequences of
an illegal act are not separable from the act itself.   They
may not be separated and made the foundation of several
and successive actions.   This would be intolerable in its
consequences, and a repeal of the statute of limitations in
almost every case of tort or contract.   Where the act is not
unlawful until, by reason of a *foreign* cause, injurious con-
sequences arise, the distinction may well exist, but even there
great care is necessary lest the distinction be falsely applied.
If I erect a dangerous wall on my own land, I can not be
sued until it falls on some one, or becomes hurtful to his
interests.   So I may put a dam on my land without being
subject to an action for damages, until the dam causes an
injury by flooding my neighbor's land with water, which may

Bank of Hartford County *v.* Waterman.

not be for months.    Or I may leave a well or pit exposed on my land and there will be no cause of action until some one falls into it.

These cases sufficiently illustrate the distinction spoken of in the books, well enough in itself, which governed the two cases cited above from the English reports.    But this distinction does not apply to the case on trial, and even in the hypothetical cases I have put, it would be more correct to hold the *continuing* of that which works the injury to be the true cause of action, and not what was done before, which was not tortious or unlawful.    This is the rule which is observed by good pleaders in suing for the continuance of a nuisance, when there has been a prior suit and recovery for the erection of it.

We all agree that trespass and actions on the case, as trover, slander, deceit, false warranty &c., are barred by the statute computing time from the act *done*, and not from the discovery of it by the plaintiff, or the development of the injury as seen from time to time.    Why not then look at the act *done* here, and make the computation as in the other cases?  The result will be the same whether we compute from what the officer attempted to do but failed in doing, or from the false return made and returned to court.    It must be a false train of reasoning, I think, that brings the mind to different results in these different cases.    If damages are uncertain, they may be shown at the time of trial, or indeed, if not actually ascertained at the time of trial, the jury must still judge of the case as they can, and assess damages according to their discretion ; otherwise every new development of injury will give a new cause of action, and a recovery in one suit will be no bar to another.    *Howell* v. *Young*, 5 B. & C., 259, is much like the case on trial.    It was an action against an attorney for negligence, where no loss at the time actually resulted, and where the negligence was not discovered for some years.    The court held that the action accrued from the breach of duty.  Holroyd, J. said : " The loss does not constitute a fresh cause of action, but a mere measure of damages. There is no *new misconduct or negligence,* and consequently

there is no new cause of action." Here the officer did not comply with the requirements of the statute, whether you consider him as doing nothing at all, or as attempting to do something which he did not fully complete. His default was in December, or not later than the twelfth day of January after. This was the real default, and the loss of the debt discovered in 1856 was only the consequence of that default. *Fetter* v. *Beale*, 1 Salk., 11.

This question has often been before the courts, and the views herein expressed are, I humbly conceive, supported by the highest and most decisive authority. A few cases only will be mentioned. In *Betts* v. *Norris*, 21 Maine, 315, it was decided, in an action against an officer for neglect of duty in not attaching sufficient real estate, as it was his duty to have done, whereby the creditor who recovered judgment lost a part of his debt, that the statute of limitations commenced running from the time of the return of the officer upon the writ, and not from the time it was ascertained by the levy upon the property attached that it was not sufficient to satisfy the whole judgment. There, as here, it was said that the extent of the injury could not certainly be proved until the sale on the execution, but the court held that that was not the test to ascertain at what time the cause of action arose. To this opinion Shepley, J. dissented, on the ground, chiefly, that no suit would lie until the extent of the loss was ascertained by a sale on the execution. He agreed, however, that if a suit would have lain before the sale, the statute would begin to run from that time. Without calling in question the accuracy of the distinction here attempted by the learned judge, I feel confident that he would not have applied his law to a case where there was no attachment at all, or where the officer was guilty of an entire default from the first, a default apparent upon the papers, if they had been examined as they might have been. He further says that there may be and often is an immediate injury arising out of a neglect of official duty, in which case the cause of action arises immediately.

*Miller* v. *Adams*, 16 Mass., 456, is a case of the misfeasance

of an officer in not duly serving a writ, whereby the judgment rendered in the case became liable to be reversed; and it was holden that he was protected by the running of the statute, from the time of the act of misfeasance, and not from the time of the reversal.

In *Cæsar* v. *Bradford*, 13 Mass., 169, the officer who served the original writ falsely returned that he had taken bail when in fact he had not. The court decided that the action accrued against him immediately. This case may be somewhat qualified by *Rice* v. *Hosmer*, 12 Mass., 127, but I think not so far as to affect the present case.

In *Wilcox* v. *The Executors of Plummer*, 4 Pet., 172, there is a masterly discussion of this subject by Wirt and Webster, who were counsel in the case. The court in that case decided, that in a suit against an attorney for negligence in not correctly suing an indorser so as to hold him liable, the cause of action was the improper manner of bringing suit. There were two counts in the declaration, one for not suing at all, and one for not doing it in a proper manner. In *Howell* v. *Young*, (supra,) which was a suit against an attorney for not carefully searching for certain mortgage incumbrances, it was held that the statute began to run at once, though the attorney represented, and truly, as he believed, that a thorough search had been made, and the contrary was not known for some years after. So in *Brooks* v. *Enderly*, 2 Brod. & B., 70. *Bank of Utica* v. *Child*, 6 Cow., 234. *Kerns* v. *Schoonmaker*, 4 Ohio, 331. *Argall* v. *Bryant*, supra. This last case was a suit against the publisher of a newspaper for negligently and erroneously publishing a legal advertisement, by the means of which, at the end of seven years, the plaintiff was subjected to loss, the error not being discovered until within six years next before the suit. The statute was held to have run from the time of the publication; and the court further held, that the form of the action, whether case or assumpsit, did not affect the principle. In *Troup* v. *Smith*, (supra,) a surveyor was sued for negligence in surveying a tract of land and dividing it into lots. The damages were necessarily gradual in their development, and were not dis-

covered until within six years before the suit was brought, but the statute was held a good bar to the action. The same was held in *Battley* v. *Faulkner*, 3 B. & Ald., 288. In 2 Greenl. Ev. Sec. 433, after stating the distinction between acts tortious in themselves and such as become actionable by future consequences, in the fullest manner sustaining the principles I have advanced, Mr. Greenleaf says: " In actions for official or professional negligence, the cause of action is founded in the breach of duty which actually injured the plaintiff, and not on the consequential damages; thus in an action against an attorney, for neglect of professional duty, it has been held that the statute of limitations begins to run from the time when the breach of duty was committed, and not from the time when the consequential damage accrued. So, in an action against a sheriff, for an insufficient return upon a writ, &c."

I will not pursue the matter further, having already said too much, and more than I should have done if I did not deem this decision one of no ordinary importance to executive officers, and perhaps to attorneys and others. Hereafter it will be easy, with a little professional adroitness in framing a declaration for official or professional negligence, to deprive such persons of the benefit of the statute of limitations, and leave them exposed to suits for an indefinite period of time.

Judgment for plaintiffs advised.