Davis, J.,
dissenting. The judgment of the circuit court stands because this Court is equally divided as to its affirmance or reversal. Inasmuch as the case is reported and may be understood to lend the authority of this Court to the judgment of the circuit court, a statement of the grounds which move one-half of the Court to vote for a reversal of the judgment seems to be required.
Under Section 4983, Revised Statutes, an action for malpractice must be brought within one year after the cause*of action accrues; and the trial judge very properly directed a verdict for the defendant on the facts appearing in the evidence. This action was commenced on June 27, 1899, while the last professional service which was rendered by the defendant, or which was requested of him, was on or about April 5, 1898. On that day the defendant made an examination of the plaintiff at the hospital and recommended that the wound made by the operation should be reopened. The plaintiff was reluctant to have that done, and finally concluded not to have it done. From that day until November, 1898, so far as the evidence shows, the defendant did not treat the plaintiff, nor was there any communication between them, although as said by Price, J., in the foregoing opinion in this case, “the discharge continued unabated during the summer, with increasing suffering,” the wound being dressed twice a day and the' discharge saturating the cloths applied to it. In November, 1898, the precise date does not appear, the plaintiff went to the defendant’s office and charged him with malpractice. Her words, as testified by herself, were: “Well, doctor, it seems to me that if you had done your work right I would have been well.” That was about all there was of that conversation. There *135 was no medical treatment asked for or given. So that the defendant's professional connection with the surgical case ended on April 5, 1898, if not before. This was fourteen months prior to the commencement •of this action, and on any tenable theory of the case the action was clearly shown to be barred by the statute of limitations.
The circuit court seems to have taken the view that it wus the duty of the defendant to follow up the plaintiff and to see that the incision made in the operation had healed, and that because “the wound was not healed she was still his patient and he still owed her the duty of a physician and surgeon who had performed an operation ;” and hence the conclusion that “her cause of action was not complete and the statute did not begin to run until such relation ceased at his office in November, 1898.” Tucker v. Gillette, 12 Circ. Dec., 401; 22 C. C. R., 664. In order to sustain this strained conclusion the court calls attention to the failure of the defendant to discover and remove the foreign substance which he had left in the wound at the time of the operation, and designates it as a continuing act of negligence on his part, “a continuing act of negligence, udiich increased rather than diminished as time went on, and it became more evident that there wrns some foreign substance in the wmúnd which should be removed.” But the ground of this •action was not, and could not be, negligence in the •after treatment. If leaving the sponge in the body of the patient at the time of the operation was harmless, and injury resulted to the patient only through such negligence in the after treatment, then an action might be grounded on such negligence. Such were Ballou v. Prescott, 64 Me., 305, and Williams v. Gillman, 71 Me., 21, cited in the foregoing opinion by *136 Price. J., although the statute of limitations was not. involved in either of those cases. But the line of authority is unbroken that if the original act of negligence causes damage, although only nominal in extent, a cause of action accrues eo instante¡ and that consequential damages may be recovered thereon up-to the time of the trial. Of course it follows that the-statute of limitations begins to run the moment a. right of action accrues, and it is so expressly provided by our statute; and it cannot be deferred or held in abeyance because the full extent of the injury is not at once apparent, nor because the plaintiff was ignorant of the negligent act which caused the injury. This principle applies equally to cases quasi ex contractu and cases purely ex delicto. Upon these well established principles it is obvious that in cases in which an act of negligence causes damage, the cause of action cannot be split up into two or more causes of action, and therefore when suit is brought to recover damages upon an act of negligence which is barred by the statute of limitations, it cannot be taken out of the statute by a subsequent act of negligence which merely aggravates the damage already accrued.
See generally on the propositions above stated, Angell on Lim., sections 136, 141, 298, 299; Wood on Lim., sections 122, 178, 179; 2 Greenleaf Ev., section 433; Lattin v. Gillette, 95 Cal., 317; Raynor v. Mintzer, 72 Cal., 585; Schade v. Gehner, 34 S. W. Rep. (Mo.), 576; Gustin v. County of Jefferson, 15 Ia., 158; Kerns v. Schoonmaker, 4 Ohio, 331; Fee v. Fee,. 10 Ohio, 470, 471; Lathrop v. Snellbaker, 6 Ohio St., 276. These Ohio decisions have in no sense been qualified or departed from.
There are several cases which so clearly illustrate the views which I have expressed above, that I calí es *137 pecial attention to them. In Lattin v. Gillette, 95 Cal., 317, cited above, and which was an action for negligence in abstracting a title, the court says, page 320: “The running of the statute was not suspended■ by the fact that the plaintiff did not ascertain the error in the certificate, or by the fact that the existence of the error was not determined by the superior court until more than two years had expired, and it was. held that the statute of limitations begins to run in an action for misconduct or negligence from the date-when the misconduct or negligence was completed, and that it is immaterial whether the negligence out of which the cause of action arises is the breach of an implied contract, or the affirmative disregard of some-positive duty.” It was also held in that case thpt although the entire damage resulting from such negligence may not have been known until the right to a recovery is barred, yet the time within which an action may be brought is not thereby prolonged.
The leading case of Wilcox v. Plummer, 4. Pet. (U. S.), 172, is strongly in point. The plaintiff placed a promissory note in the hands of Plummer for collection. He instituted a suit against the maker but neglected to sue the indorser. The maker was insolvent and Plummer afterwards sued the indorser, but ineffectually, - by reason of another-act' of negligence, a fatal misnomer of the plaintiff. A judgment of non-suit was finally rendered in this action, and in the meantime the action against the indorser was barred by the statute of limitations. The question was whether the statute of' limitations commenced to run when the error was committed in the commencement of the suit against the indorser, or whether it commenced from the time the plaintiffs were nonsuited in their action. It was. *138 held that the statute began to run from the time of the committing of the error by misnomer in the action against the indorser. Mr. Justice Johnson, in delivering the opinion of the court, said: “The only question in the case is, whether the statute runs from the time the action accrued, or from the time that the damage is developed or becomes definite. And this we hardly feel at liberty to treat as an open question * * * . Nor is it analogous to the case of a nuisance; since the nuisance of to-day is a substantive cause of action, and not the same with the nuisance of yesterday, any more than an assault and battery * * * . When the attorney was chargeable with negligence or unskillfulness, his contract was violated and the action might have been sustained immediately. Perhaps, in that event, no more than nominal damages may be proved, and no more recovered ; but on the other hand, it is perfectly clear that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear that the damage is not the cause of action.”
Coady v. Reins, 1 Mont., 424, was, like the present case, an action against a surgeon for malpractice in setting and treating the plaintiff’s dislocated and fractured arm and elbow, on February 28, 1868. The “continuing negligence” in the after treatment of the case seems to have made no impression on the court, which said: “The gist of the action in this instance is the negligence and unskillfulness of breach of duty as laid in (the complaint, and not the injury or damage consequent thereon. If such actions were commenced immediately upon a person becoming chargeable in such a case, it is probably true that no more than nominal damages could be recovered, yet *139 it is clear that proof of actual damages may extend and embrace facts occurring and growing out of the injury even up to the verdict itself. But the statute in cases of this nature begins to run, regardless of the form of action, whether case or assumpsit, from the time of the negligence or breach of duty. And in this case, under the act in force at the time of said negligence or breach of duty, it must be held to have commenced to run from February 28, 1868,” which was the time when the operation was performed.
In Moore v. Juvenal, 92 Pa. St., 484, it was held that when the declaration in an action against an attorney for malpractice, alleges a breach of duty and a special consequential damage, the breach of duty, and not the consequential damage, is the cause of action, and the statute runs from the time of the former and not from the time the special damage is revealed or becomes definite. It was also held that the fact that the defendant continued to act as attorney for the plaintiffs after he had violated his implied contract with them, does not suspend the operation of the statute.
In view of these well settled principles, it would be impossible to sustain the judgment of the circuit court, and impossible to reach any other conclusion than that at which the court of common pleas arrived. Hence the circuit court was driven to its invention of “a continuing act of negligence,” which for its novelty would be patentable if it were not entirely useless. I have diligently sought for authority for this strange doctrine and have not found any, and have carefully examined all the cases cited in the foregoing opinion with no better result. The nearest approach to it which has come under my observation is in the class of cases represented by Board of Commrs. *140 v. Pearson, 120 Ind., 426, and Bank of Hartford Co. v. Waterman, 26 Conn., 324; bnt these cases are broadly distinguishable from this theory of'“a continuing negligence.” They hold that although the negligence complained of had been committed long enough before the suit to be barred by the statute of limitations, yet if no damage whatever ensued until a time within the statute, no cause of action accrued against which the statute might run. Board of Commrs. v. Pearson, supra, was a case where a bridge was negligently constructed, but no accident happened therefrom for thirteen years thereafter. In Bank v. Waterman, supra, an officer who had undertaken to attach real estate and made return that he had done so, in fact, failed to do so. The error was not discovered until the debtor had failed and no property could be found upon which to levy. In an action on the case against the officer the statute of limitation was pleaded, and it was held that the cause of action did not accrue until, by failure to obtain satisfaction of his execution, he had sustained actual damage. In neither of these cases does there appear even a hint of this theory of “a continuing negligence,” and in the latter case, even the conclusion which was announced, was combated by Ellsworth, J., in a most vigorous and impressive dissenting opinion.
As was said by the Supreme Court of the United States, in Wilson v. Plummer, supra, there is no analogy between an action for malpractice and an action for a nuisance, “since the nuisance of to-day is a substantive cause of action and not the same with the nuisance of yesterday, any more than an assault and battery.” Hence’ the doctrine of a continuing trespass or nuisance cannot be invoked here. The doctrine that every continuance is a new nuisance for *141 which a separate action will lie, applies only to nuisances of a transient rather than of a permanent character. “But while this is the rule, * * * yet, when the original nuisance is of a permanent character so that the damage inflicted thereby is of a permanent character, and goes to the entire destruction of the estate affected thereby, or will be likely to continue for an indefinite period, and during its existence deprive the landowner of any beneficial use of that portion of his estate, a récovery not only may but must be had for the entire damage in one action, as the damage is deemed to be original; and as the entire damage accrues from the time the nuisance is created, and only one recovery can be had, the statute of limitations begins to non from the time of its erection against the oioner of the estate or estates afected thereby." Wood on Lim., section 180. It was on this principle that Valley Ry. Co. v. Franz, 43 Ohio St., 623; Perry Co. v. Railroad Co., 43 Ohio St., 451; and Williams v. Coal Co., 37 Ohio St., 583, cited in the foregoing opinion, were decided. If there is any real analogy between cases of nuisance or trespass and cases of malpractice, it seems to me perfectly clear that a discriminating analysis would require the application here of the rule last stated; for the gist of this action is the allegation in plaintiff’s petition that the defendant negligently and without the knowledge of plaintiff closed the opening made in performing the operation, without removing the cheese-cloth sponge therefrom. It is true that it is also alleged that the defendant for more than twelve months thereafter negligently permitted the cheesecloth sponge to remain in the plaintiff’s abdomen; but the injury was complete so far as concerns the defendant when he closed the wound and did not remove the *142 sponge. If the defendant had never seen the plaintiff after the operation, the injury was permanent and complete so far as the defendant’s agency and liability was involved. If any injury whatever ensued from delay in discovering and removing the sponge it was merely incidental and consequential to the principal act of leaving the sponge in the* abdomen when the operation was completed. Stated in slightly different language, but the same in effect, the charge is that the defendant permitted the sponge to remain in. the abdomen when he closed the incision, and he permitted it to remain afterwards as long as he attended her. In this way of stating the case, it is clear that the wrong inflicted by the defendant was complete on the day of the operation, and the cause of action then accrued on the principles hereinbefore stated, unless the defendant is to be held liable in another cause of action for not knowing or not discovering that the sponge was there. But this could not be, for whatever injury the plaintiff sustained was the result of or consequential to, the wrong inflicted in the beginning, and hence a recovery for that would be a bar to a recovery for the other. Further analysis, it seems to me, would not make the case any plainer. A perfect cause of action accrued at once on the day of the operation, November 3,1897.
The argument that the defendant had entered into a contract by which it became his duty to continue to attend the plaintiff until she should be well, or until the plaintiff discharged him, and that therefore the statute would not begin to run in his* favor until his service was ended is equally fallacious. The rule is the same whether the action sounds in contract or in tort, that is, the statute of limitations begins to run in the instant' that a cause of action accrues, and a *143 cause of action accrues in tlie instant that damage is incurred, although at first the damage is only nominal. Angell on Lim., sections 136, 298; Wood on Lim., sections 177, 178, 179. And in Craig v. Chambers, 17 Ohio St., page 261, Judge White, delivering the opinion of the court, said: “It is proper to say, that we suppose that any want of the proper degree of skill or care which diminishes the chances of the-patient’s recovery, prolongs his illness, increases his suffering, or, in short, makes his condition worse than it would have been if due skill and care had been used, would, in a legal sense, constitute injury.” However, it seems to be a mere waste of time to discuss the question whether this action is ex contractu, quasi ex contractu, or ex delicto, for the statute provides that malpractice, whether it belong to one or another of these classes, is barred in one year from the time the cause of action accrues. If the surgical operation was skillfully and properly performed in all respects and no injury resulted therefrom, the statute would run from the time of a subsequent negligence and injury for then, and then only, would a cause of action accrue; but the case we are now considering is not such a case. It is true that it is said in Angelí on Lim., section 120, that “when there is an undertaking which requires a continuation of services, the statute does not commence running until they can be completed;” but that remark was not intended to apply to actions to recover damages for negligence, whether the negligence be the breach of a contractual duty or any other duty. It applies only to actions purely ex contractu, and all of the cases cited by the author on this point, are cases in which the suit was for compensation for services, and in which the statute was used as a defense.
*144 Wilson v. Plummer, supra, and Moore v. Juvenal, supra, were cases in which the services contracted for were not complete at the time of the injury. Thei theory involved in the misleading phrases “a continuing negligence,” “a continuing wrong,” “a continuing obligation,” “a continuous contract,” is not only contrary to all authority, but from my point of view it is utterly absurd when tested in the light of established principles.
For the reasons stated I am of the opinion that the judgment of the circuit court should be reversed and that of the court of common pleas affirmed.
Shauck and Crew, JJ., concur in the dissenting opinion.