JOHN V. WILCOX AND THOMAS WILCOX *vs.* THE EXECUTORS OF
KEMP PLUMMER.

*Action of assumpsit to recover from the defendant, in the character of an attorney
at law, the amount of a loss sustained by reason of neglect or unskilful conduct.*
A promissory note was, by the plaintiff, placed in the hands of P. for collection.
He instituted a suit in the state court thereon against the drawer on the 7th
of May 1820, but neglected to do so against the indorser. The drawer proved
insolvent. On the 8th of February 1821 he sued the indorser, but committed a
fatal mistake by a misnomer of the plaintiffs ; upon which, after passing through
the successive courts of the state, a judgment of non-suit was finally rendered
against the plaintiffs. Before that time, the action against the indorser was
barred by the statute of limitations ; to wit, on the 9th of November 1822.
This suit was instituted on the 27th of January 1825. The statute of limita-
tions of North Carolina interposes a bar to actions of assumpsit after three
years.
The questions in the case were, whether the statute of limitations commenced
running, when the error was committed in the commencement of the action
against the indorser ; or whether it commenced from the time the actual dam-
age was sustained by the plaintiffs by the judgment of non-suit. Whether
the statute runs from the time the action accrued ; or from the time that the
damage was developed, or became definite. Held, that the statute began to
run from the time of committing the error by the misnomer in the action against
the indorser.
The ground of action here is a contract to act diligently and skilfully ; and both
*the contract and the breach of it admit of a definite assignment of date.* When
might this action have been brought, is the question ; for from that time the
statute must run.
When the attorney was chargeable with negligence or unskilfulness his contract
was violated ; and the action might have been sustained immediately. Perhaps
in that event, no more than nominal damages may be proved, and no more re-
covered ; but on the other hand, it is perfectly clear that the proof of actual
damage may extend to facts that occur and grow out of the injury, even up to
the day of the verdict. If so, it is clear that the *damage* is not the cause of
the action.

THIS case came before the court, on a division of opi-
nion between the judges of the circuit court of the United
States, for the district of North Carolina.

It was an action of assumpsit, to which was pleaded the
statute of limitations.

It was alleged, and proof offered, that on the 28th of Janu-
ary 1820, the testator of the defendants, who was a collect-

[Wilcox et al. *vs.* The Executors of Plummer.]

ing attorney, accustomed to collect for John V. Wilcox and Company, received from them, for collection, a note which had been drawn by Edmund Banks, on the 2d of October 1819, payable to John Hawkins two months after date, and by him indorsed, on the 9th of November 1819, to Hinton and Brame, and by them, subsequently, to the plaintiffs.

On the 7th of February 1820, the testator, Kemp Plummer, instituted a suit in the name of John V. Wilcox and Thomas Wilcox, who composed the firm of John V. Wilcox and Company, against Banks, and at August 1820, recovered a judgment against him. Banks proved insolvent, and on the 8th of February 1821, the testator caused a writ to be issued in the names of John V. Wilcox, Arthur Johnson and Major Drinkherd, as co-partners in the firm and style of John V. Wilcox and Company, against Hawkins, the indorser of the note.

This action, thus instituted and docketed as a suit by John V. Wilcox and Company against John H. Hawkins, was, after various delays, brought to a trial in April 1824, when the plaintiffs were nonsuited; and this nonsuit was affirmed on an appeal to the supreme court, at June term 1824.

Thereupon the present suit was instituted, viz. on the 27th of January 1825, by John V. Wilcox and Thomas Wilcox, copartners under the firm and style of John V. Wilcox and Company, against the testator of the defendants; and on his death this suit was revived against them by *scire facias.*

Two breaches were assigned, in distinct counts, by the plaintiffs in their declaration:

The first, that the testator neglected to institute any suit for them against the indorser, until the 9th of November 1822, on which day the remedy against the indorser was barred by statute.

The second, that he instituted and carried on for them the suit, as herein before stated, against the indorser, negligently and unskilfully; and before the same was terminated, the remedy against him was barred as aforesaid, as fully appears by the record.

The jury found a verdict for the plaintiffs, subject to the opinion of the court on the statute of limitations. The time allowed by this statute for bringing all actions on the case,

is three years after the cause of action accrues, and not afterwards.

In the circuit court, it was contended by the defendants; that on the first count of the declaration, the cause of action arose from the time when the attorney ought to have sued the indorser, which was within a reasonable time after the note was received for collection; or, at all events, after the failure to collect the money from the maker: and that on the second count, his cause of action arose at the time of committing the blunder, in the issuing of the writ in the names of the wrong plaintiffs.

It was contended by the plaintiffs; that on the first count their cause of action accrued when the testator of the defendants suffered the remedy to be extinguished by a neglect to sue on or before the 9th of November 1822: and on the second count, when the suit unskilfully brought and prosecuted was terminated; or, at all events, on the 9th of November 1822.

It was agreed, that if the positions taken on the part of the defendants be correct on both counts, then a judgment is to be entered for the defendants.

If those taken by the plaintiffs be correct, then a judgment is to be entered for the plaintiffs on both counts : or if either of the positions thus taken by the plaintiffs be correct, then a judgment to be entered for the plaintiffs on the count wherein the statute ought not to bar.

On which questions the judges divided in opinion, and directed the difference to be certified to the supreme court.

Mr Wirt, for the plaintiff, maintained; that the positions taken by the plaintiffs in the circuit court were correct, and that the same should be so certified to the circuit court, by this court.

The action is against an attorney for negligence, by which the plaintiffs lost their debt. It is admitted, that an attorney is only liable for gross negligence, 2 Starkie's Evid. 133. In all the cases it is held that the action is not maintainable until the debt is not recoverable. Russel *vs*. Palmer, 2 Wilson, 328. 3 Day, 390.

It is the loss of the debt which gives the action ; and where the object of the action is to recover the whole debt from the attorney, the cause of action does not arise until the debt is lost.

If the plaintiff has sustained a special damage by the negligence of the attorney, which is short of the loss of the whole debt, he may have an action for such special damage ; and the cause of action will arise from the date of the negligence which produces it.  But, where the negligence is charged to be the cause of the loss of the whole debt, the cause of action does not arise until the negligence has continued so long as to produce that effect.

Thus, in this case, it was not the negligence of one or two years which produced the loss of the debt; it was not until the continuance of this negligence for three years had raised the bar of the statute of limitations in favour of the original debtor, that the loss of the debt became complete, and the cause of action for the whole debt arose against the attorney.

Starkie says ; in an action against an attorney for negligence, it seems that the statute runs from the time when the plaintiff was damnified, and not from the time of the negligence.

If this be law, it decides the case before the court; for the plaintiff was not damnified to the extent of the demand made by this action, until his right of action was extinguished against the original debtor ; that is until the bar of the statute arose to protect that debtor.  Ballantine on Limitations, 100, 101.  Now, the universal principle is, that the cause of action runs from the act or omission which produces the injury.

There are some modern cases which on their first aspect may seem to bear adversely on this action ; but when examined with reference to this principle, and compared with the cause of action stated in this declaration, they will be found to proceed on a marked distinction between these cases, and the case at bar.

In the case of Short *vs*. M'Carthy, 3 Barn. & Ald. 626, the attorney had neglected to examine whether certain stock the plaintiff was about to purchase, stood in the name of the seller on the books of the bank of England.  He reported

that it did, and the plaintiff purchased. The court held, that the cause of action arose from the time of the neglect to make the examination, and his false report that he had done so. This was a single act, by which the mischief was done.

The case of Howell *vs.* Young, 5 Barn. & Cres. 259. 11 Eng. Com. Law Rep. 219. This is a case similar to that of Short *vs.* M'Carthy. The attorney neglected to examine if real property was incumbered, and the statute was held to run from his neglect, which was a single act. In both those cases, the injury was consummated at once by an act of negligence. And herein the cases have a strong resemblance to that of Hilson *vs.* Boddington, 11 Com. Law Rep. 223, cited by Holroyd, Justice, in Howell *vs.* Young.

In reply to the argument for the defendant; Mr Wirt said, the question is whether, during the whole of the connexion of Mr Plummer with his clients, he had used due diligence? The distinction is between a single act of wrong, and a continuing act of wrong. The first cause of action was not sufficient in itself: until its effect was fatal to the plaintiffs' interests, no suit could have been maintained. The error in the inception of the suit, was a continuing cause of action.

The principle being acknowledged, that an attorney is not liable but for gross negligence, and not for every negligence; for that only which produces the injury; could an action have been brought on the failure of Mr Plummer to institute the suit properly. This would not have been permitted.

In this case, every year was a new negligence until the final loss of the plaintiffs' debt. It is suggested, that the principle which in some cases makes the statute of limitations run from the time of the knowledge of the fraud or injury, will apply.

Mr Justice STORY. This principle applies only in cases of torts; and it has been expressly decided, not to apply to cases of assumpsit.

Mr Webster for the defendant.

The question is, whether the statute of limitations was not a sufficient bar to both counts in the declaration?

To consider them separately. The first count alleges, that no suit was brought against the indorser, until he was discharged by the act of limitations; which was on the 9th of November 1822. Mr Plummer received this note for collection on the 28th of January 1820. He sued the drawer of the note, and had judgment in August 1820; but obtained no satisfaction, the drawer having failed. According to the allegations on this count, he then delayed more than two years before he took any steps against the indorser. This was negligence clear and actionable. He should have used all reasonable diligence, and as soon as he intermitted that diligence, he was liable to an action for neglect. The cause of action against him is, his omitting to sue the indorser so soon as he ought to have sued him; and the true question is, when did this cause of action arise?

The plaintiff contends, that this cause of action arose when the indorser was discharged by lapse of time; but this cannot be maintained. Suppose there had been no statute of limitations by which an indorser would have been discharged, would not an action have lain against Mr Plummer for not suing him? He had a reasonable time, according to the course of the courts, and the practice of the country, within which to sue the indorser; and if he did not sue within such reasonable time, he himself was subject to a suit for negligence.

He had promised to use all common diligence to collect the note. Uncommon delay was a breach of that promise, and a case of action. It is not at all material to this cause of action, whether the full extent of damage was then ascertained or not ascertained. It was enough that there was a cause of action. From that moment the statute began to run. The law regards the time when the cause of action arises, not the time when the degree of injury, more or less, is made manifest; and when the cause of action is a breach of promise or neglect of duty, the right to sue arises immediately on that breach of promise or neglect of duty; and this right to sue is not suspended, until subsequent events shall show the amount of damage or loss. This may be shown at the time of trial; or indeed if it be not actu-

ally ascertained at the time of trial, the jury must still judge of the case as they can, and assess damages according to their discretion.

A rule different from this would be attended with one of two consequences, either no action could be brought in such a case until the full amount of injury was ascertained; or a fresh and substantive cause of action would arise on every new addition to the probability of loss.

The cases are clear and decisive to show that in such cases as this, the cause of action arises with the original neglect. Short vs. M'Carthy, 3 Barn. & Ald. 626, 630, 3 Eng. Com. Law Rep. 403. Battley et al. vs. Faulkner et al. 3 B. & A. 288, 3 Eng. Com. Law Rep. 289. Howell vs. Young, 5 B. & C. 254, 11 Eng. Com. Law Rep. 219. 2 Saunders on Pleading and Evid. 645.

Howel vs. Young is much like this case. It was an action against an attorney for negligence, where no loss actually resulted, and where the negligence itself was not discovered for some years. The court held the action accrued from the time of the breach of duty. There the action was case; but the court looked to the real nature of the transaction, and applied the statute to it, disregarding the form of action. Holroyd, Justice, said, "the loss does not constitute a fresh ground of action, but a mere measure of damages. There is no new misconduct or negligence of the attorney, and consequently there is no new cause of action." This language is strictly applicable to the case before the court. Omitting to sue, beyond a reasonable time, Mr Plummer was guilty of negligence; a cause of action had then accrued against him: his omitting still farther to sue was no new neglect; it was no new cause of action, but merely the continued existence of the former cause.

Counsel below illustrated this rule of law very well by referring to the cause of action for defamation. If words, not in themselves actionable, be spoken, and special damage result, the party injured may sue within the time limited for such suits after the happening of the injury; because, in such case, the specific injury is the cause of action. But if words be spoken which are of themselves actionable, and

[Wilcox et al. *vs.* The Executors of Plummer.]

special damage result also, in such case, notwithstanding or not regarding the time of the happening of the special damage, the statute of limitation will run from the time of speaking the words.

It seems to have been contended for the plaintiff, in the court below, on this first count, that Mr Plummer was bound to sue the indorser; that this was a continuing obligation; and that every day furnished a new fault and a new injury, till the claim on which he should have sued was extinguished. If this mode of argument be plausible, it is no more. The same reasoning would apply, and with equal force, to every case of implied promise. If one borrows money, it is his duty to pay; and he is in default every day, and commits a new injury, every day, until he does pay. Yet the statute runs in his favour from the day when he first ought to pay.

Mr Plummer was bound to sue at the first court because that was reasonable time; not suing then, he was from that moment liable to an action for negligence; and supposing him not to have sued at all, as this first count charges, his fault was then complete.

But the true view of the case, no doubt, is that attempted to be raised under the second count. Mr Plummer did sue; but he sued negligently, or unskilfully. He brought a suit against the right party, on the plaintiffs' note; but he misdescribed the plaintiffs. This was his error. Here was the negligence; and, therefore, here the cause of action. He might have been sued for this negligence the next day after he issued the writs; and the plaintiffs would have been entitled to recover such damages as they could show, at the time of trial, and on the trial, they had sustained. This original error in the attorney was a breach of duty; from which the failure in the suit resulted as a consequence. The failure in the suit was not his breach of duty; the loss of the debt was not his breach of duty. These were both but the consequences of that breach. They were its results, and they fixed the measure of damages, but were not the negligence which was alone the cause of action. It is established law, that the limitation of the statute is to be referred to that act or omission which gives the cause of ac-

tion, without any regard to the consequences which ascertain the amount of damages.   1 Salk. 11.

In the view which the plaintiffs' counsel takes of this matter, it would necessarily follow, that after the first term, or court, in which Plummer could have sued, and ought to have sued, the plaintiff had a new cause of action against him, every day, for three years ; each day's neglect being, as it is said, a new default, or new cause of action. . If each day's neglect be a new default, and new cause of action, it is quite clear that the pendency of a suit for yesterday's default would be no bar to a suit founded on a default of to-day ; and if these causes of action be, as is contended they are, all new, independent and distinct, then it follows that independent and distinct damages may be given in each.   Arguments can be no more than specious which lead to results like these.

Mr Justice JOHNSON delivered the opinion of the Court.

This suit was instituted in the circuit court of the United States, in North Carolina, to recover of the defendants the amount of a loss sustained by reason of the neglect or unskilful conduct of their testator, while acting in the character of an attorney at law.

A promissory note was placed in his hands for collection, by the plaintiffs.   He instituted a suit in the state court thereon, against Banks, the drawer, on the 7th of February 1820, but neglected to do so against Hawkins the indorser. Banks proved insolvent ; and then, to wit, on the 8th of February 1821, he issued a writ against the indorser, out committed a fatal misnomer of the plaintiffs, upon which, after passing through the successive courts of the state, a judgment of nonsuit was finally rendered against them. Before that time, the action against the indorser was barred by limitation; to wit, on the 9th of November 1822, and this suit was instituted on the 27th of January 1825.

The form of the action is assumpsit ; and the plea now to be considered is the act of limitation, which in that state creates a bar to that action in three years.

The case is presented in a very anomalous form ; but in order to subject it to any known class of rules, we must consi-

der it as coming up upon opposite bills of exceptions, craving instructions, on which the court divided. This court can only certify an opinion on the points so raised; that part of the agreement stated in the record which relates to the rendering of judgment on the one side or on the other, must have its operation in the court below.

There were two counts in the declaration : the one laying the breach in not suing at all, until the note became barred; thus treating as a mere nullity the suit in which the blunder was committed; and the other laying the breach in the commission of the blunder ; but both placing the damages upon the barring of the note by the act of limitation. As this event happened on the 22d of November 1822, this suit is in time if the statute commenced running only from the happening of the damage. But if it commenced running either when the suit was commenced against the drawer, or a reasonable time after, or at the time of Banks's insolvency, or at the time when the blunder was committed; in any one of those events, the three years had run out. And thus the only question in the case is, whether the statute runs from the time the action accrued, or from the time that the damage is developed or becomes definite.

And this we hardly feel at liberty to treat as an open question.

It is not a case of consequential damages, in the technical acceptation of those terms, such as the case of Gillon *vs.* Boddington, 1 B. & P. 541, in which the digging near the plaintiff's foundation was the cause of the injury; for in that instance no right or contract was violated, and by possibility the act might have proved harmless, as it would have been had the wall never fallen. Nor is it analogous to the case of a nuisance ; since the nuisance of to-day is a substantive cause of action, and not the same with the nuisance of yesterday, any more than an assault and battery.

The ground of action here, is a contract to act diligently and skilfully ; and both the contract and the breach of it admit of a definite assignment of date. When might this action have been instituted, is the question : for from that time the statute must run.

When the attorney was chargeable with negligence or unskilfulness, his contract was violated, and the action might have been sustained immediately. Perhaps, in that event, no more than nominal damages may be proved, and no more recovered; but on the other hand, it is perfectly clear, that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the *damage* is not the cause of action.

This is fully illustrated by the case from Salkeld and Modern; in which a plaintiff having previously recovered for an assault, afterwards sought indemnity for a very serious effect of the assault, which could not have been anticipated, and of consequence could not have been compensated in making up the verdict.

The cases are numerous and conclusive on this doctrine. As long ago as the 20th Eliz. 1 Croke, 53, this was one of the points ruled in the Sheriffs of Norwich *vs.* Bradshaw. And the case was a strong one; for it was altogether problematical, whether the plaintiffs ever should sustain any damages from the injury. The principle has often been applied to the very plea here set up, and in some very modern cases. That of Battley *vs.* Faulkner, 3 B. & A. 288, was exactly this case; for there the damage depended upon the issue of another suit, and could not be assessed by a jury until the final result of that suit was definitely known. Yet it was held, that the plaintiff should have instituted his action, and he was barred for not doing so. In the case of Short *vs.* M'Carthy, which was assumpsit against an attorney for neglect of duty, the plea of the statute was sustained, though the proof established that it was unknown to the plaintiff until the time had run out. And the same point is ruled in Granger *vs.* George, 5 B. & C. 149. In both cases the court intimating, that if suppressed by fraud, it ought to be replied to the plea, if the party could avail himself of it. In Howell *vs.* Young, the same doctrine is affirmed, and the statute held to run from the time of the injury, that being the cause of action, and not from the time of damage or discovery of the injury.

The opinion of this court will have to be certified in the

[Wilcox et al. *vs.* The Executors of Plummer.]

language of the defendants' supposed bill of exceptions, to wit, "that on the first count in the declaration, the cause of the action arose at the time when the attorney ought to have sued the indorser, which was within a reasonable time after the note. was received for collection, or at all events, after the failure to collect the money from the maker. And that on the second count his cause of action arose at the time of committing the blunder in issuing the writ in the names of wrong plaintiffs."

. This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of North Carolina, and on the points and questions on which the judges of the said circuit court were opposed in opinion, and which were certified to this court for its opinion, in pursuance of the. act of congress in such case made and provided, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that it be certified, to the said circuit court of the United States, for the district of North Carolina, "that on the first count in the declaration, the cause of action arose at the time when the attorney ought to have sued the indorser, which was within a reasonable time after the note was received for collection, or at all events at the failure to collect the money from the maker; and that on the second count his cause of action arose at the time of committing the blunder in issuing the writ in the names of wrong plaintiffs; all of which is accordingly hereby certified to the said circuit court of the United States for the district of North Carolina.