JUDGE PRYOR
delivered the opinion oe the court.
On'the 15th of February, 1858, David L. Brooks, Jas. H. Anderson, and the present appellant, A. C. Kinnison, became the sureties of William Shain in a bond executed by the latter in the Bullitt County Court as the statutory guardian of William and Nathan Morrow. Kinnison, in order to be relieved from liability as surety on this bond, instituted proceedings for that purpose requiring Shain to give an additional bond, and on the 16th of January, 1860, an order was made in the county court accepting one H. B. North as surety in lieu *601 of Kinnison, and releasing the latter from further liability. Shain, the guardian, shortly afterward died, largely indebted to his wards. In August, 1865, they instituted an action against the sureties, not including the appellant Kinnison, to recover the balance due them on settlement. A judgment was rendered in favor of the wards on the 19th of April, 1867, by which Brooks and Anderson, two of the sureties, were made liable for several hundred dollars, and North released from any responsibility, the court adjudging that the paper to which the name of North was fixed was not obligatory upon him. The paper signed by North, and upon which Kinnison claimed to have been released, was a printed form of a guardian’s bond with none of the blanks filled, and dated on the 16th of January, 1860. David L. Brooks, one of the sureties, having paid off the judgment, instituted the present action against Kinnison for contribution, and recovered the sum of five hundred and seventy-three dollars. The case was brought to this court by an appeal, and it was again held, as in the case of Brooks v. Morrow (MS. Opinion), that the order of the county court releasing a surety from liability without taking another bond was a nullity, and that a signature appended to a mere blank form was not obligatory on the party signing it. A cross-pleading was filed by Kinnison on the 21st of October, 1868, in the action of Brooks against him, by which Kinnison sought to recover of the present appellees, Carpenter, the county judge, and Lee and others, the sureties of Samuels, the county clerk, the amount of any judgment that Brooks might recover against him; it being alleged in this pleading that the liability of the appellant, if any, originated from the willful neglect of Carpenter, then judge, and Samuels, then clerk of the Bullitt County Court, in not filling up the blanks in the bond signed by North, or taking from him such á bond as would have released him (Kinnison) from any further responsibility as surety. A demurrer was filed by the sureties of Samuels, the *602 county clerk, to this cross-pleading and sustained, and a demurrer and answer was filed by Carpenter, the county judge. The demurrer of Carpenter seems not to have been disposed of, but the court upon the final hearing adjudged in his favor on a paragraph in the answer relying on the statute of limitations.
The only questions presented in this appeal are, did the court err in sustaining the demurrer filed by the sureties of the county clerk, and in adjudging that the statute of limitations was available as a defense for the county judge ?
It is the duty of the clerk of a county court to draft all the orders, and prepare such other writings as may be required of him by the presiding judge and necessary for the transaction of the business of the court. He acts in the discharge of these duties under the direction and supervision of his superior, the judge, and when these acts, consisting in orders of the court and such writings as may be required to facilitate its business, have been approved and signed, it must be presumed that they were done and performed under the sanction and direction of the judge. It is made the duty of the latter to see that the proper orders are made. These orders are required to be read in open court and then to be signed by him. The judge alone approves of such sureties and bonds as may be tendered in court by guardians and other fiduciaries. The clerk has no power to accept such bonds or to fill up the blanks until required by the judge, and hence the necessity of alleging that he was required to perform these duties, and his refusal to discharge them, before he can be made liable, if such liability can exist at all. There is a manifest difference between the case under consideration and that class of cases where it is primarily the duty of the clerk to perform the services, and in the discharge of which he alone must act without regard to the dictation of any superior. When a clerk fails to record a deed left in his office for record he is responsible for the injury sustained (Bank of Kentucky v. Haggin, 1 Marsh. 306), *603 or, as said by this court in the case of The Commonwealth v. Chambers (1 Dana, 12), “an action on an official bond of a clerk for failing to make out a complete record for this court,” the only inquiry of consequence is, “ did the papers constitute a part of the record? If so, then Chambers committed a breach of official duty in failing to make them a part of it.”
In the cases cited the presiding judge had no power to control the action of the clerk, while in the case before us it was the duty of the clerk to make such entries only and perform such services as the judge might direct. It is difficult to conceive how a mere ministerial officer, such as a clerk, can be made liable for doing that which has been approved by a superior, whose orders when in the discharge of such services he is compelled to obey, in the absence of an allegation of some fraudulent and corrupt act on the part of both. There is no such allegation in the cross-pleading, nor even an allegation that the clerk was directed to fill up the blank bond. The demurrer in behalf of the sureties of Samuels was therefore properly sustained.
The Revised Statutes (chapter “Guardian and Ward”) gives to the ward a right of action against the judge of the county court for his failure to take bond with good security from his guardian. This right of action is as to the ward alone, and if the judge is responsible in this case to the surety, who has used all the means provided by law to indemnity himself against loss, and is deprived of that indemnity by the misfeasance or the non-feasance of the judge, the liability of the latter must be made to rest upon common-law principles, and when failing to discharge a plain ministerial duty, he may be made responsible.
The record shows that the appellant followed the letter of the statute in order to obtain indemnity on account of his liability as surety. The guardian Shain, by reason of the motion of the appellant, brought into court and offered as *604 surety in lieu of the latter H. B. North, of unquestioned solvency, willing to sign the bond and save appellant harmless in the premises.
The order of the county court recited the fact that the bond had been given, but by reason of the misfeasance of the judge in not having it properly executed by filling up the blanks, and in accepting it in that condition when tendered by the guardian, the appellant many years after was made to sustain a loss he had labored so faithfully to provide against. Conceding the liability of the county judge in such a case, of which there is some doubt, it only remains to determine when the statute of limitations commenced running.
Section 2, article 3, chapter 63 of the Revised Statutes is as follows: “An action for an injury to the rights of the plaintiff not arising on contract, and not hereinafter enumerated, shall be commenced within five years after the cause of action accrues.”
It is insisted by counsel for the appellant, in a persuasive argument, that the plaintiff had no cause of action until he was made liable by reason of the default or negligence of the appellee. This view of the question is sustained in the case of the Bank of Hartford County v. Wateman (26 Conn. 324), Ellsworth, Justice, dissenting. In that case the sheriff had made a false return in stating that he had levied an attachment upon a particular tract of land, when in fact it had been levied on another and different tract. The debtor in the mean time failed, and no property could be found on which to levy the execution. It was held that the cause of action did not accrue at the date of the false return, nor until by failure to obtain satisfaction of the execution the plaintiff had sustained actual damage.
It is conceded in the case referred to that when an injury, however slight, is complete as a legal injury, the period of limitation at once commences. A distinction, however, is made *605 in relation to the right of action resulting between breaches of public duty and breaches of private contract; and, reasoning upon this distinction, it was adjudged that no action could be maintained until the damages resulting therefrom had been sustained. We think this view of the question is not sustained by authority, whether the principle is applied to either a public or private duty. When the act committed is neither illegal nor wrongful, but by reason of. it some injury afterward accrues, then the statute runs only from the date of the injury. As in the illustration given by Ellsworth, Justice, in his dissenting opinion in the case cited, “ If I erect a dam on my land, I am not subject to an action by my neighbor for damages until his land is flooded, or in some way injured by the water.” When the act itself is illegal as to the party making the complaint, and for which an action can be maintained, the consequences of that illegal act can not be separated from it so as to present distinct causes of action, and we are at a loss to perceive how the act of the sheriff in failing to levy an execution obtained to secure A\s debt is such a public duty as authorizes the court to say that no individual right of A has been violated when the sheriff refuses to levy the execution, or makes a false return on it when levied.
The public has no cause of action against the sheriff for neglecting to levy an execution to satisfy the debt, and the only party injured is the person seeking to have the duty performed. It is true that where a highway has been obstructed one must be injured either in his health, limbs, or property, or in some other way, before he can maintain an action; or, in other words, if the injury is to the public and not to the individual, the latter must have suffered a consequential injury before he has any legal remedy. The only analogy, however, between such a case and the one before us is in so far as it illustrates the difference between immediate and consequential injuries and public and private rights.
*606 ■ When a false return is made by an officer a cause of action accrues, and a payment of the debt made after an action is instituted against- him will not exempt the officer from the payment of costs. If an officer neglects or refuses to attach or levy upon the demand of the plaintiff and particularly where indemnity is offered if required, an action may at once be instituted against the officer for a violation of official duty.
In the case of Betts v. Norris (21 Maine, 315) it was held, “ where the officer had neglected his duty in failing to attach sufficient property to pay the debt, that the statute commenced running from the date of the return by the officer in the suit, and not from the time it was ascertained that the attached property could not pay the debt.”
In Miller v. Adams (16 Mass. 456), an-action against an officer for not duly serving a writ, by reason of which the judgment in the case was reversed, it was adjudged that the statute commenced running from the act of misfeasance, and not from the time the judgment was reversed. In a suit against an attorney for negligence in not suing the indorser with the drawer so as to hold him liable on the bill, it was held that the statute commenced to run from the bringing of the su‘' by the attorney. (Wilcox v. Plummer's ex’r, 4 Pet. 172.)
In the case of Howell v. Young (5 B. & C. 259), an action against an attorney for negligence, where no loss resulted at the time and none was sustained for years afterward, it was held that the cause of action accrued from the breach of duty, and not from the consequences growing out of it.
When this breach of duty on the part of the appellee occurred the appellant by proper proceedings could at once have obtained indemnity by compelling the county judge to take such a bond as would release him from responsibility or protect him against loss. The guardian might have been ruled to make a settlement of his accounts, and upon the appellant’s liability being ascertained the judge in default *607 could have been compelled to account in damages. What the extent of recovery would have been at that time must have depended on the solvency of the guardian. His legal remedy was then complete, and it is no argument to say that when the breach was committed the damages could not be ascertained, so as to indemnify the plaintiff.
This same process of reasoning would apply to all actions for personal injuries, and every new development of the injury would give a new cause of action.
There is no allegation of fraud, and that the discovery thereof was not made until the appellant had been made liable for contribution to his co-surety; and if there had been, there is nothing in the record to sustain it.
The cross-petition alleges that by reason of this breach of official duty on the part of the county judge, in failing to take a proper bond, and having an improper and false order made on the records of his court, the plaintiff had sustained damages. This breach of duty was in the year 1860, and no action instituted until the year 1868. The appellant’s own statement shows that the cause of action accrued eight years prior to the filing of his complaint. It may be said that the order of the county court reciting the fact that the appellant had been released as surety and a new bond executed misled the appellant and caused the delay. This is doubtless true; but it is a well-recognized rule of law that ignorance of one’s rights will not prevent the statute from running; and -while cases of great hardship now and then occur in enforcing this wise and wholesome rule of law, to undertake to make exceptions to it would, in its effect, repeal the statute. Although the appellant has suffered loss by this neglect of the appellee, it might have been avoided by an exercise of that vigilance incumbent upon him when he exacted the performance of the duty. He could easily have discovered by an examination of the bond and papers on file in the proceeding he had instituted *608 that the paper signed by North was a mere blank, and his being lulled into security by the act of the appellee can not prevent the running of the statute.
Lord Campbell, in the case of the East India Company v. Paul, involving a similar question, said, “It will therefore be an extreme hardship on him if by reason of this delay, which they occasioned, they may successfully defend themselves by pleading the statute of limitations; but it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad laws.”
In Angelí on Limitations, section 71, it is said, “ The action of assumpsit lies to recover damages for consequential wrongs or torts, which, though they are ex delicto, are quasi ex contractu; and they arise from malfeasance, or doing what the defendant ought not to do; non-feasance, or not doing what he ought to do; and misfeasance, or doing what he ought to do improperly;” and in section 136, same volume, it is said, “The rule in such cases is that the cause of action arises immediately on the happening of the default, and is not postponed to the damage thereby occasioned.”
In Greenleaf on Evidence (vol. 2, sec. 437) the following rule is laid down: “In actions for official or professional negligence the cause of action is founded in the breach of duty which actually injured the plaintiff, and not on the consequential damages. . Thus in an action against an attorney for neglect of professional duty it has been held that the statute of limitations begins to run from the time the breach of duty was committed, and not from the time when the consequential damages accrued; so in an action against an officer for an insufficient return on a writ,” etc.
This court heretofore, in the case of Ellis v. Kelso (18 B. Mon. 300), in an action against a party for making a false entry on the books of the firm of which he was clerk, held that the cause of action accrued and the statute of limi *609 tations began to run at the date of the entry, and not from the time the firm sustained a loss by reason of the false entry. The principle herein recognized is the settled law of both England and this country, except so far as it may have been modified by statutory enactment.
Judgment affirmed.