AACHEN & MUNICH FIRE INS. CO. v. MORTON.

(Circuit Court of Appeals, Sixth Circuit. November 15, 1907.)

No. 1,683.

**1. LIMITATION OF ACTIONS—COMPUTATION OF PERIOD OF LIMITATION—ACCRUAL OF RIGHT OF ACTION.**

The statute of limitations begins to run from the time a right of action accrues for a breach of duty or contract or for a wrong, without regard to the time when actual damage results.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 217, 218.]

**2. SAME—BREACH OF CONTRACT.**

An insurance company undertook to cancel a policy in accordance with its terms by giving notice and returning the unearned premium. The policy having been lost, a lost policy receipt was given, signed by the owner of the property and mortgagees, to whom the policy was made payable, by which they agreed that, if the policy was found, it would be surrendered. The property was burned, and the policy, having been found, was assigned by the mortgagees to a third person, who recovered thereon against the company. *Held*, in an action by the company to recover the amount so paid out by it from one of the mortgagees, based on an alleged breach of the cancellation agreement, that such breach occurred and plaintiff's cause of action accrued at the time the policy was assigned by defendant in violation of his agreement to surrender it, and that the statute of limitations commenced to run at that time.

In Error to the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

The Aachen & Munich Fire Insurance Company, a foreign corporation doing business in Michigan, insured against loss by fire a certain hotel building and furniture therein situated in that state, and owned by a Michigan corporation known as the "St. Joseph Hotel Company." This contract of insurance bore date of July 17, 1897, and covered the risk for one year, unless sooner terminated by cancellation, as provided by the policy. Attached to the policy was a slip providing "loss, if any, payable to Andrew Crawford and John H. Graham, as their interest may appear." These persons were at the time mortgagees and stockholders. February 28, 1898, notice was given to the hotel company and to said Crawford and Graham of an intention to cancel the policy. On March 3, 1898, the unearned part of the premium was accordingly returned to the hotel company, but the policy was not actually delivered up, because it had been lost or misplaced. In consequence of this fact an agreement in the following words and figures was made and delivered to the insurer:

"Policy No. 61,251.      Return Premium, $17.75.

"Agency at Benton Harbor, State of Michigan.

"In consideration of seventeen and 75-100 dollars to us paid, the receipt whereof is hereby acknowledged, we hereby surrender, release and relinquish all our rights, title and interest in policy No. 61,251 of the Aachen and Munich Insurance Company of Aix-la-Chappelle, issued at its Benton Harbor Agency, and all advantages to be derived therefrom and the said policy having been lost or mislaid, we agree to make no claim whatever for any loss or damage on which the said company would be liable under said policy, and to return said policy, (if the same should be found) to the said company forthwith, and without further compensation and we certify that said policy has not been assigned or transferred in any manner whatsoever.

"Dated March 3, 1898.      Hotel St. Joseph Company,
                               "Per S. J. Morton, Assured.
"J. H. Graham,
"A. Crawford,
            "Mortgagees."

On or about July 10, 1898, the hotel was destroyed by fire. On January 13, 1898, the policy, which in the meantime had been found, was assigned by the hotel company and by Crawford and Graham to one H. G. Stone, a citizen of Illinois. On January 15, 1898, Stone, the assignee, brought suit in a circuit court of the state of Illinois against the insurer in the name of Crawford and Graham for the use of said Stone. The insurance company appeared and set up the cancellation of the policy as a defense, and upon a trial there was a judgment for the defendant. The cause was thereupon taken by appeal prayed and allowed the said Graham, Crawford having died, to the Appellate Court of the First District of the state of Illinois, which court reversed the judgment of the circuit court and entered judgment against the insurance company for the full amount, with interest and costs. This judgment was affirmed by the Supreme Court of the state of Illinois on October 25, 1902. The judgment was thereupon paid, together with costs and the expenses of the litigation. On January 17, 1906, this suit was started against the said Graham, assignee of the said policy and plaintiff in the said Illinois suit, to recover from him the amount of the said Illinois judgment, together with costs, interests, and expenses of the said litigation. The opinions of both the Illinois courts, by agreement, are made a part of each count in the declaration. Graham meantime died, and the suit was revived against his administrator. A demurrer to the plaintiff's amended declaration was sustained and judgment rendered for the defendant. From this judgment, the insurance company has sued out this writ of error.

Arthur Webster and Willard Kingsley, for plaintiff in error.
G. M. Valentine, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge (after stating the facts as above). Two questions have been argued as defenses arising under the demurrer to the plaintiff's declaration: First, the effect of the judgment of the Illinois court as res adjudicata; and, second, the Michigan statute limiting personal actions to six years. These in their order.

The policy of insurance upon which Graham's suit for the use of Stone was brought contained the usual provision that "this policy shall be canceled at any time at the request of the insured, or by the company, by giving five days' notice of such cancellation," etc. The defense made to the Illinois suit was that the policy had been effectually canceled before any loss had occurred. The Illinois Appellate Court found as a fact that both Graham and Crawford had an insurable interest in the property insured as the property of the St. Joseph Hotel Company, both as mortgagees and as stockholders, and that their interest in the policy as stockholders had not been canceled or surrendered, but had been effectually transferred after loss to Stone, the beneficial plaintiff in that suit. Upon this finding that court gave judgment against the insurance company for the full amount of the policy with interest and costs. Upon a writ of error to the Supreme Court this judgment was affirmed. This affirmance, from the opinion of that court, appears to have been based upon the fact that findings of the Appellate Court had been made a part of the judgment of that court, thereby leaving open for review no question except whether upon the facts so made a part of the judgment the law had been correctly applied. Upon the record, as made up, that court also held that no propositions of law had been saved under the practice of the court which would enable it to question the propositions of

law held by the Appellate Court in behalf of the plaintiffs in the lower court. Thus finding its hands tied, the Supreme Court affirmed the judgment of the Appellate Court against the present plaintiff in error, the Aachen & Munich Fire Insurance Company. Aachen & Munich Fire Ins. Co. v. Crawford, 199 Ill. 367, 65 N. E. 134. Unless the plaintiff in error can escape the effect of this Illinois judgment as an adjudication, it is clear that the insurance company cannot recompense itself by a recovery against Graham's administrator in an action which is necessarily grounded upon the proposition that the recovery in the Illinois court against it was wrongful and erroneous. In short, it was adjudged in that action, it being one in which Graham was an actor on one side and the insurance company upon the other, that Graham's interest in the hotel as a stockholder was insured, and that the cancellation agreement did not effectually cancel the policy as to that interest. The present action is in direct contravention of that adjudication.

But the learned attorneys who now represent the insurance company say that the judgment in that case is not conclusive here under the averments of the amended declaration, which, they say, sets forth a state of facts in respect to the cancellation agreement which make an issue which was not presented by the pleadings in the Illinois case, and thus not then adjudged. These new facts are, in substance, that the parties intended that the stockholder's interest of Graham and Crawford should be canceled and surrendered, and that if the cancellation agreement, called the "Lost policy receipt," did not plainly express this intent, it is because it is defective in form and fullness. It is now averred that Graham actively undertook to fully cancel and effectually surrender any benefit under said policy in every character, and that he affirmed and represented that the receipt given for the lost policy "was in manner and form a good, valid, and efficient surrender, discharge, and cancellation of said policy and loss slip attached thereto." It is further alleged that that contract or receipt was delivered by him to the company "with the intent to cancel and release all the interests which he had or claimed to have" in the policy or lost slip.

Assuming, as we must, for the purposes of this case, that the "lost policy receipt" did not operate in terms as a cancellation and surrender of the policy in so far as that policy protected Mr. Graham's interest as a stockholder, a very grave question is presented as to whether it can be varied or contradicted by parol evidence of the intent and purpose of the parties or their antecedent declarations; its execution and delivery not being denied. Assurance Company v. Building Association, 183 U. S. 308, 349, 361, 22 Sup. Ct. 133, 46 L. Ed. 213, has greatly narrowed the limits within which such evidence is available when the written instrument is unambiguous and actual fraud in the execution or delivery is not relied upon. But, passing the question without express decision, we think that relief must be denied, because plaintiff's right of action arose more than six years before this suit was begun. A right of action accrues whenever such a breach of duty or contract has occurred, or such a wrong has been sustained, as will give a right to then bring and sustain a suit. That

the statute begins to run from the time that a right of action accrues, without regard to when the actual damage results, is well settled. 26 Cyc. 1065, 1069, 1116, and cases there cited: Wilcox v. Plummer, 4 Pet. 172, 7 L. Ed. 821.

If an act occur, whether it be a breach of contract or duty which one owes another or the happening of a wrong, whether willful or negligent, by which one sustains an injury, however slight, for which the law gives a remedy, that starts the statute. That nominal damages would be recoverable for the breach or for the wrong is enough. The fact that the actual or substantial damages were not discovered or did not occur until later is of no consequence. The act itself, which is the ground of action, cannot be legally separated from its consequences. Were this so, successive actions might be brought in many cases of contract and tort as the damages developed, although all the consequential injuries had one common root in the single original breach or wrong. This would in effect nullify the statute.

There is a class of actions for consequential damages which are distinguishable from the class to which we refer and from the one at bar. The breach of duty or other wrongful act may or may not be legally injurious to the plaintiff until he has suffered some consequence therefrom. Thus a railway may be operated without the exercise of statutory precautions intended to safeguard the public. But, until one has sustained some injury in consequence, he has no right of action. It is the duty of a municipality to maintain its streets so that they may be safely used by the public. But the mere fact that a street is in a dangerous condition will not give a right of action to every one who chooses to sue. It is only when some injury has occurred as a consequence that the statute begins to run against the injured person's right of action. One may maintain a dangerous wall along a public street, but no individual right of action against him will arise until some injury shall result. If one has the legal right to take the coal or other mineral below the surface of premises occupied by another, he owes that person the duty of doing it in such manner as will not disturb his enjoyment of the surface. But until the enjoyment of the surface premises is interfered with no right of action arises for the breach of this duty. This last illustration is from the case of Bonomi v. Backhouse, 9 H. L. Cases, 305, and the decision in that case went upon the ground that the cause of action did not arise until the enjoyment of the surface was affected by the falling in of the ground. The surface owner was not bound to bring his suit when the mischief was done which ultimately led to the injury of his rights, because no legal injury had occurred until there was some interference with the enjoyment of his surface estate. The case of Smith v. City of Seattle, 18 Wash. 484, 51 Pac. 1057, 63 Am. St. Rep. 910, is to the same effect. The case of State v. McClellan, 113 Tenn. 616, 625, 85 S. W. 267, has been relied upon by the plaintiff in error as an authority holding that it is the occurrence of actual damage which starts the statute. That was an action upon the official bond of a register of deeds, etc., for damages resulting from his failure to correctly register a deed placed in his hands for that pur-

pose by the plaintiff. It was held that the statute of limitations did not begin to run until the plaintiff had sustained some injury in consequence. But this was placed upon the well-recognized distinction between the liability of a public official for a breach of official duty and the right of action which may arise between persons having only private relations with each other when there has been a breach of some contract or duty which one personally owes to the other. The Tennessee court, speaking by Judge Shields, said:

"Public officers are not liable for a breach of official duty to an individual unless he can show that in the public duty was involved a duty to himself as an individual, and that he has suffered a special and peculiar injury, not common to the general public. In other words, without special injury, the wrong is to the public only, and punishable by indictment or removal from office, or both. The plaintiff, in an action against a public officer for a breach of a duty primarily due to the public, must show both the breach of an official duty, in the correct discharge of which he was interested, and the special resultant injury to himself. All these elements must be present. This rule is necessary to prevent public officers from being annoyed and harassed by groundless actions and in the promotion of good public services. 23 A. & Eng. Ency. of Law, 379, 380; Mechem on Public Officers, §§ 670–674. Therefore a right of action against a public officer growing out of a breach of official duty involving individual rights is not complete and does not accrue until the happening of a consequential injury resulting proximately from the breach."

To the same effect is the case of Moore v. Juvenal, 92 Pa. 490. People v. Cramer, 15 Colo. 159, 25 Pac. 302, Steel v. Bryant, 49 Iowa, 117, and Bank of Hartford v. Waterman, 26 Conn. 324, were similar to the Tennessee case, and stand upon the distinction already stated, being actions upon the official bonds of public officers for neglect of official duty resulting in loss to the plaintiffs. The later Iowa case of Russell v. Abstract Co., 78 Iowa, 216, 42 N. W. 654, 4 L. R. A. 536, illustrates the distinction. That was an action against a private abstract company. It was held that the statute began to run when an erroneous abstract was furnished, although the damage did not result until later. To the same effect as the case last cited are Kinnison v. Carpenter, 9 Bush (Ky.) 606, and Carpet Co. v. Dornan, 64 Mo. App. 25.

The ground of the present action is the wrongful assignment of the policy of insurance to Stone. That act was in breach of his express agreement to deliver same to the company "forthwith" when it should be found. That act was also in direct contravention of his implied obligation, in view of the averments of the declaration in respect of the actual intent of the parties as to the full cancellation of the policy and his "affirmation and representations" as to the full effectiveness of the "lost policy receipt" as a cancellation of every interest which he claimed. Everything which followed was the plain result or consequence of that act, whether we treat it as a mere breach of contract or a tortuous and wrongful act in view of his obligations and relations to the insurance company. A right of action then arose. That the damages immediately accruing may have been purely nominal does not alter the case. For the nominal damages the plaintiff might have maintained its suit. Actual damages accrued when suit was actually brought upon the policy for the company was then com-

pelled to incur the expense of a defense, and, when judgment was finally rendered for the amount of the policy with interest and costs, the full extent of the injury done by the act of assignment was determined. The act of wrongfully assigning the policy is the cause of action, or the plaintiff has stated none, and the damages which resulted cannot be legally separated from the act which constituted the legal wrong which lies at the foundation of this suit.

The case of Wilcox v. Plummer, 4 Pet. 172, 181, 7 L. Ed. 821, is not only a leading case, but an authoritative one. That was an action in assumpsit to recover the amount of a loss sustained by the negligent and unskillful conduct of a litigation. A promissory note was placed in the attorney's hands for collection by suit against the maker and indorser. The maker alone was sued. ' Judgment had. He proved to be insolvent. Suit was then brought against the indorser. This action was nonsuited for a negligent misnomer of the plaintiff. By the termination of this action the statute had run in favor of the indorser. The question in the case was whether the statute of limitations commenced running when the error was committed in the commencement of the action against the indorser, or only when the actual damage was sustained by the loss of the debt through the bar of the statute in favor of the indorser. The court held that the statute began to run when the negligent act of the attorney was committed. Among other things, the court said:

"When the attorney was chargeable with negligence or unskillfulness, his contract was violated, and the action might have been sustained immediately. Perhaps, in that event, no more than nominal damages may be proved, and no more recovered; but, on the other hand, it is perfectly clear that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the damage is not the cause of action. This is fully illustrated by the case from Salkeld and Modern, in which a plaintiff, having previously recovered for an assault, afterwards sought indemnity for a very serious effect of the assault, which could not have been anticipated, and of consequence could not have been compensated in making up the verdict.

"The cases are numerous and conclusive on this doctrine. As long ago as the 20th Eliz. (Cro. Eliz. 53), this was one of the points ruled in the Sheriffs of Norwich v. Bradshaw. And the case was a strong one; for it was altogether problematical whether the plaintiffs ever should sustain any damages from the injury. The principle has often been applied to the very plea here set up, and in some very modern cases. That of Battery v. Faulkner, 3 B. & Ald. 288, was exactly this case; for there the damage depended upon the issue of another suit, and could not be assessed by a jury until the final result of that suit was definitely known. Yet it was held that the plaintiff should have instituted his action, and he was barred for not doing so. In the case of Short v. McCarthy, which was assumpsit against an attorney, for neglect of duty, the plea of the statute was sustained, though the proof established that it was unknown to the plaintiff until the time had run out. And the same point is ruled in Granger v. George, 5 B. & C. 149; in both cases the court intimating that, if suppressed by fraud, it ought to be replied to the plea, if the party could avail himself of it. In Howell v. Young, the same doctrine is affirmed, and the statute held to run from the time of the injury, that being the cause of action, and not from the time of damage or discovery of the injury."

Judgment affirmed.