THAPAR, Circuit Judge, concurring.
When Dr. Jason Springer sued for breach of contract, he was attempting to vindicate his own private rights rather than the rights of the public at large. As such, he did not need to demonstrate concrete and particularized harm to satisfy standing. An invasion of his legal rights was enough. I write separately to explain why.
When the Cleveland Clinic hired Dr. Springer, he enrolled his family in the Cleveland Clinic's employee benefit plan ("Total Care"). As part of his family's relocation from Utah, he needed to transport his infant son-who has been hospitalized since birth-by air ambulance. The plan, however, required him to obtain pre-approval. He did not. Thus, Total Care denied his reimbursement claim-leaving Dr. Springer on the hook for the full cost. The air ambulance service, however, never charged (or threatened to charge) Dr. Springer a dime. As a result, Total Care alleges that he has suffered no damages and does not have standing to sue.
In discussing standing, courts (and litigants) often lose sight of the first principles that animate the doctrine. Standing is about the limits of judicial power. The federal judiciary only has the power to decide "Cases" or "Controversies"-all other disputes are left to the political branches. U.S. Const. art. III; Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens , 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (explaining that standing is an " 'essential and unchanging part' of Article III's case-or-controversy requirement, and a key factor in dividing the power of government between the courts and the two political branches" (citation omitted) ). In order for a dispute to be a case or controversy, the party bringing the claim must have standing, or, in other words, they must be the appropriate party to file suit. If a party brings a claim to vindicate their private rights, standing can be straightforward. Since the founding, a lawsuit seeking to vindicate an individual's private rights has counted as a case or controversy for purposes of Article III. See Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1551, 194 L.Ed.2d 635 (2016) (Thomas, J., concurring); 1 William Blackstone, Commentaries on the Laws of England *119 (describing private rights as those that "appertain and belong to particular men, merely as individuals or single persons"). As a private right, it would be their right to vindicate. But a lawsuit seeking to vindicate a public right presents a harder question. When a plaintiff seeks to vindicate a *291 right belonging "to the people at large," there is always a risk that he will call upon the courts to test the abstract legality of the government's actions. Lansing v. Smith , 4 Wend. 9, 21 (N.Y. 1829) ; see also Spokeo , 136 S.Ct. at 1553 (Thomas, J., concurring). And weighing in on the abstract legality of a government action pushes the court into the forbidden territory of the other branches. After all, "[v]indicating the public interest (including the public interest in Government observance of the Constitution and laws) is a function of Congress and the Chief Executive," not the courts. Lujan v. Defenders of Wildlife , 504 U.S. 555, 576, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (emphasis omitted). So to ensure that the plaintiff bringing a public-rights lawsuit presents a true case or controversy (i.e., that they are the appropriate party to file this public-rights lawsuit), the plaintiff must show that he has actually suffered a concrete and particularized harm. Id. at 560, 112 S.Ct. 2130.
Since the requirements of standing turn on whether the plaintiff seeks to vindicate a private or public right, the first step in any standing case is to classify the asserted right. An easy way to think of this distinction is to think of criminal and tort law. Imagine that Sam punches Jon in the face. He has harmed both the public (by committing a crime) and Jon (by committing a battery). While Jon cannot bring criminal charges against Sam, Jon can bring a private tort suit. Now imagine Jon's face is made of steel and Sam's punch bounces right off. Jon has no harm in the traditional sense, but since his "personal, legal rights [have been] invaded," he may still sue. See Spokeo , 136 S.Ct. at 1551 (Thomas, J., concurring) ("[C]ourts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded." (citations omitted) ); see also 3 Blackstone, Commentaries at *120 (noting that battery was actionable whether or not the victim felt pain). But Jon can neither prosecute Sam nor ask the court to force the executive to do so. See Lujan , 504 U.S. at 577, 112 S.Ct. 2130 ("To permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to 'take Care that the Laws be faithfully executed.' " (citations omitted) ).
So how do courts determine whether a litigant has asserted a private right? We look back to the rights that common law courts allowed private litigants to enforce. See, e.g. , Coleman v. Miller , 307 U.S. 433, 469-70, 59 S.Ct. 972, 83 L.Ed. 1385 (1939). And in cases ranging from assault to trespass to slander, there was no question that private litigants could vindicate their rights before a court. See De S. & Wife v. W. de S. , (1348 or 1349) Y.B. 22 Edw. 3, f. 99, pl. 60 (assault); Robert Marys's Case , (1613) 77 Eng. Rep. 895 (K.B.) (trespass); Crittal v. Horner , (1618) 80 Eng. Rep. 366 (K.B.) (slander). This was true regardless of whether a violation of the private right caused a concrete or particularized harm-the violation alone was enough to justify a judicial remedy. See Marbury v. Madison , 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803) (Marshall, C.J.) ("[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." (quoting 3 Blackstone, Commentaries *23) ).[1]
*292 Here, Dr. Springer sued to vindicate his private rights. He claimed that Total Care denied him health insurance benefits under his ERISA plan. Those health benefits represent a bargained-for exchange that vest in Dr. Springer as an individual. And when rights vest in an individual-rather than the whole community-we consider those rights "private." 3 Blackstone, Commentaries *2; Francis Plowden, Jura Anglorum 487-88 (1792). Dr. Springer does not share his health benefits the same way he shares, say, waterway transportation. His health benefits do not belong to "the people at large." Lansing , 4 Wend. at 21. No one else can claim his contractual rights, and prior litigation in this case even confirms that point. See Angel Jet Servs., LLC v. Cleveland Clinic Emp. Health Plan Total Care , 34 F.Supp.3d 780, 783 (N.D. Ohio 2014).
Moreover, the fact that ERISA governs this action does not transform Dr. Springer's private right into a public one. After all, Congress can create civil remedies for private rights. E.g. , Huntington v. Attrill , 146 U.S. 657, 676-77, 13 S.Ct. 224, 36 L.Ed. 1123 (1892) ("But as [the statute] gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is ... simply to enforce a private right secured under its laws to an individual."). Here, ERISA does not give Dr. Springer his rights; the health plan does. ERISA merely provides a mechanism through which Dr. Springer can enforce those underlying, bargained-for rights. See Mass. Mut. Life Ins. Co. v. Russell , 473 U.S. 134, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (claiming that Congress created ERISA to "protect contractually defined benefits"). Using this mechanism, Dr. Springer essentially pled a breach-of-contract claim. And common law courts historically analyzed contractual claims using a private-rights framework. Marzetti v. Williams , (1830) 109 Eng. Rep. 842, 845 (K.B.) ("It is immaterial in such a case whether the action in form be in tort or in assumpsit. It is substantially founded on a contract; and the plaintiff, though he may not have sustained a damage in fact, is entitled to recover nominal damages."); see also Calder v. Bull , 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (Chase, J.) ("The prohibitions ... not to pass any law impairing the obligation of contracts, [was] inserted to secure private rights.").[2] They entertained breach-of-contract claims even when "no real loss be proved." Clinton v. Mercer , 7 N.C. (3 Murr.) 119, 120 (N.C. 1819) ; accord Wilcox v. Plummer's Ex'rs , 29 U.S. (4 Pet.) 172, 182, 7 L.Ed. 821 (1830). Such violations at least deserved nominal damages because the offender had *293 invaded a private right. E.g. , Marzetti , 109 Eng. Rep. at 845.
Because Dr. Springer seeks to vindicate a private right against Total Care, he has standing to sue under Article III. And, as the majority correctly notes, he loses on the merits. As such, I concur.

See also Webb v. Portland Mfg. Co. , 29 F. Cas. 506, 507-08 (C.C.D. Me. 1838) (Story, J.) ("Actual, perceptible damage is not indispensable as the foundation of an action. The law tolerates no farther inquiry than whether there has been the violation of a right."); Whittemore v. Cutter , 29 F. Cas. 1120, 1121 (C.C.D. Mass. 1813) (Story, J.) ("[W]here the law gives an action for a particular act, the doing of that act imports of itself a damage to the party. Every violation of a right imports some damage, and if none other be proved, the law allows a nominal damage."); Ashby v. White , (1703) 92 Eng. Rep. 126, 137 (Q.B.) (Holt, C.J., dissenting) ("[S]urely every injury imports a damage, though it does not cost the party one farthing, ... for a damage is not merely pecuniary, but an injury import damage, when a man is thereby hindered of his right."); Green v. Cole , (1670) 85 Eng. Rep. 1037 (K.B.); Joseph Story, Commentaries on the Law of Agency § 217 ("Where the breach of duty is clear, it will ... be presumed, that the party has sustained a nominal damage.").

Sometimes courts analyze ERISA claims using trust law. E.g. , Firestone Tire & Rubber Co. v. Bruch , 489 U.S. 101, 110-11, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ("ERISA abounds with the language and terminology of trust law."). Although Dr. Springer's case more closely resembles a breach-of-contract claim, even construing his suit as a fiduciary-duty claim under trust principles would not defeat standing. Here, too, courts treated fiduciary claims as vindicating private rights. See, e.g. , Keech v. Sandford , (1726) 25 Eng. Rep. 223 (Ch.).